Smith *v.* Estate of Steele.

---

JACOB SMITH *v.* ESTATE OF ELIZUR STEELE.

*Creditor. Principal and Surety.*

A surety, who holds ample security or indemnity from the principal, for signing a note, is estopped from setting up as a defence, a contract between the principal and the creditor, of an enlargement of time of payment of the note, even if the contract of enlargement was made without his knowledge and consent.

A surety, who has received the amount of the debt in money from his principal, is clearly the principal after he so receives it; and if he has received half of the money, then he becomes a co-principal.

*Query.* Whether the surety, after having received ample indemnity for signing a note, can place himself in the same situation he was before, so as to claim all the privileges of a strict surety.

APPEAL from the decision of commissioners, disallowing a claim of the plaintiff, against the estate of Elizur Steele, for the amount of a note bearing date the 19th day of April, 1841, for five hundred and twenty-eight dollars and ten cents, and given by said Steele, in his lifetime, and one James Steele, to the plaintiff, and made payable to him or order, in one year from date, with interest annually. The declaration filed, was in the common form. The defendant pleaded the general issue, and gave notice of special matter in defence.

On the trial by jury, the plaintiff offered in evidence, the note and a mortgage from said Elizur Steele, to secure the payment of said note.

The defendant then offered testimony, tending to prove that in January, 1843, the said James Steele made a contract with the plaintiff to pay, and did pay, to him, six per cent. on the then amount of said note, above the interest named in said note, and that in consideration thereof, the plaintiff agreed to delay payment of said note for one year; that said agreement was renewed from time to time between them, and that there was a like agreement subsisting, at the time of the decease of the said Elizur Steele, in August, 1847. And that the said Elizur Steele executed said note, as surety for the said James, and that these several agreements were without the knowledge or consent of the said Elizur. The defendant also offered evidence, tending to show that at the time said note was executed, the plaintiff knew that said Elizur Steele signed the same as surety for said James.

A mortgage from said James to said Elizur, was also offered in evidence, bearing date the 25th day of November, 1842. And it appeared, that at the time of giving the mortgage last named, viz: on the said 25th day of November, 1842, the said James made an assignment of personal property to the said Elizur, and to a Mr. Palmer and a Mr. York, as collateral security to them, with power to sell the same and apply the avails thereof, to pay such debts as they or either of them were holden to pay for him, the said James, including the plaintiff's debt.

There was also testimony, tending to prove that there was more than property enough assigned to pay all that said assignees and each of them were holden, or became holden, to pay for the said James, including the plaintiff's debt. That the assignees took possession and control of the property, and disposed of it; that they applied a portion of the avails thereof, with the approbation of the said James, to the payment of certain debts of the said James, not mentioned in the said assignment, and upon which the said assignees were not holden; but it did not appear that the said assignees received any part of the avails of said property for themselves, or that anything was retained by them, or either of them, to go in payment or part payment of the plaintiff's debt.

The plaintiff insisted, and requested the court so to charge the

jury, that if they found the facts which the evidence tended to prove, the agreement between the said James and the plaintiff constituted no defence to the action.   But the court refused so to charge the jury, and did charge, among other things, that if they found that the said Elizur Steele was originally a surety on said note for the said James, and ever remained so, and that the assignment of property made by said James to said Elizur and others, in November, 1842, was merely as collateral security, or indemnity. for their liabilities for him, and that such property was all applied for the use of the said James, and in payment of his debts, and that. said Elizur had received nothing to go in payment of the plaintiff's debt, and that the plaintiff knew that said Elizur signed said note only as surety, it would not prevent the defendant, in this case, from setting up the defence, that the contract had been extended by the plaintiff to the principal in the note; and that the case was not altered in this respect, because the property was not disposed of agreeably to the terms of the assignment.

The jury returned a verdict for defendant.

To the refusal of the court to charge as requested, and to the. charge as above detailed, the plaintiff excepted.

*A. P. Hunton* and *Peck & Colby* for plaintiff.

1. The case shows that there was sufficient property placed in the hands of the intestate, by the principal, to pay, and for the purpose of paying, the note in question.   The surety holds this property in trust for the benefit of the plaintiff, as well as of himself, and for its misapplication he is responsible to the plaintiff.

The rule is well settled, that when the principal places in the hands of the creditor a fund for the security of the debt, the creditor holds it in trust for that purpose, and he must apply it in discharge of the debt.   If he permits it to go back into the hands of the principal, or applies it to a different purpose, the surety is discharged *pro tanto.   Law* v. *East India Co.,* 4 Vesey, 824.   *Capel* v. *Butler,* 2 S. & S. 457.   *Williams* v. *Price,* 1 S. & S. 581. *Phillips* v. *Artling,* 2 Taunton, 206.   *Baker* v. *Briggs,* 8 Pick. 122. *McCullum* v. *Hinkley et al.,* 9 Vt. 143.   *Manchester Bank* v. *Bartlett,* 13 Vt. 315.   *Homer* v. *Savings Bank,* 7 Conn. 484.

2. The same principle applies to the case of the surety, who has received securities from the principal for the payment of the debt.

*Mc Cullum* v. *Hinkley et al.,* 9 Vt. 143. *Bank of Auburn* v. *Theorp,* 18 Johns. 505. *Curtis* v. *Tyler,* 9 Paige, 432. *Vail* v. *Foster,* 4 Comstock, 312. 4 Kent's Com. 307, 6th Ed. 1 Story's Equity, sec. 502, 638.

3. The facts relied upon, to avoid the matters set up in defence of the action, are avoidable at law as well as in equity. The whole doctrine of equitable defences by the surety, is borrowed from a court of equity; and if the surety may now set up a matter at law, as a defence, of which he could formerly only avail himself by going into chancery, it would be an anomaly, and drive the creditor into a court of equity to avoid a mere equitable defence. *Boston Hat Manufactory* v. *Messinger,* 2 Pick. 223. *The People* v. *Jansen,* 7 Johns. 337. *Commercial Bank* v. *French,* 21 Pick. 486. *Rees* v. *Barrington,* 2 Vesey, Jr. 542. —— v. *Shaw,* 3 Comstock, 446.

4. The intestate being fully indemnified by the surety, and having the right to dispose of the property for the payment of this note, could not have availed himself of this defence while the property was in his possession; and having *wrongfully* parted with it, the result is the same. *Chilton & Pierce* v. *Robbins et al.,* 4 Ala. 223 N. S. *Moore* v. *Paine,* 12 Wend. 123. *Bradford* v. *Hubbard,* 8 Mass. 155.

*Hebard & Martin* for defendant.

I. The jury, under the direction of the court, have found the facts set forth in the defendant's plea and notice, to be true.

That these facts, if found from proper testimony, and under proper instructions from the court, constitute a defence, will not be questioned. *Austin* v. *Dorwin,* 21 Vt. 38. *Turrill* v. *Boynton,* 23 Vt. 142.

II. The objection to the judgment grows out of the charge of the court, and is based upon the fact that the defendant had property in his hands at one time sufficient to pay all liabilities.

This objection, however, may be met and obviated by the main facts found in the case.

1. This arrangement between Elizur and James Steele was one in which the plaintiff had no interest, and was not for his benefit, and of which he had no *knowledge,* and therefore its *performance* or *nonperformance* could in no way affect the rights or liabilities of the plaintiff.

Smith *v.* Estate of Steele.

2. The surety may make any legal defence in his power, notwithstanding his indemnity.

The indemnity which the principal gives the surety, no way affects the liability of the surety to the payee of the note. He holds the indemnity for his ultimate security, in case he is obliged to pay the note, but neither lessens nor increases his liability to pay it.

3. At the time of making the agreement with the principal, to extend the time, the plaintiff had no knowledge that the principal had given the surety any indemnity, and of course did not act, nor rely upon that fact.

The surety had no knowledge that the time of payment had been extended.

The opinion of the court was delivered by

REDFIELD, Ch. J.   The only question made in the present case is, how far a surety, who has ample collateral security from the principal, is precluded from taking advantage of any enlargement of the time of payment, by arrangement between the creditor and the principal, this property having subsequently, by consent of the principal, gone to pay other of his debts.

This case states, that the first contract for the enlargement of time was made in January, 1843, the note falling due in April following, which was for one year, and that this agreement was renewed from time to time, until the decease of defendant, Steele, in August, 1847.

On the 25th day of November, 1842, the surety gave the principal a mortgage of real estate, and made an assignment of personal property to secure him for all his indebtedness to him, and specially to secure him for signing this note—as appears by the conditions of the mortgage, which was recorded in the proper office.

The testimony tended to show, that the security was ample, and it must be so regarded, for the purposes of this trial, as it was virtually rejected by the court. It did not appear at what time this property was applied to other debts.

Upon general principles, it seems to us, that so long as the surety was fully secured, by property in his hands, he should be estopped from objecting to any enlargement of the time of payment, made by arrangement between the creditor and principal. If this fact is known to the creditor, it would certainly place his conduct

in a very different light, from what it is when no such indemnity exists. We can all see, that in such a case there can probably be no fraud in fact. And in equity, (and in law, we think the rule should be the same,) there is no fraud if such indemnity exists, whether known to the creditor or not. And this ground of defence for the surety, goes upon the supposed basis of fraud. 1 Story Eq. § 327. In such a case, the surety is the virtual principal, and ought to be bound by every enlargement of the time of payment, quite as much, perhaps more, than are joint principals by such a contract made by one of their number and the creditors, of which there is no doubt.

A surety who is fully indemnified, by property in his possession, which, by the terms of the assignment, he is at liberty to convert at once into money, as in the present case, stands much in the same light as a surety, who has received the amount of the debt in money from his principal. And in such case he is clearly the principal. And so, if he had received half the money, he would become a co-principal; and in all these cases, as it seems to us, on general principles, he should not be permitted to claim the privileges of a strict surety, without indemnity. The case of *Chilton* v. *Robbins*, 4 Ala. 223, is fully in point, to show that the surety cannot avail himself of any such defence, while he retains such security, and to that extent, certainly seems a sound case. The case of *Moore et al.* v. *Paine*, 12 Wend. 123, goes upon the ground that even if the principal be released by the concurrence of the creditor, sureties fully indemnified are not thereby released. In that case, the replication averred that the sureties still retained the indemnity which had become money. And to the extent of contracts of enlargement, made while the surety had ample indemnity of the kind shown here, there can be no doubt he would be estopped from setting up this defence. And as he had such security, when the first contract of enlargement of time of payment was made, and nothing appears but such was the fact, at the subsequent times of such enlargement, the case must be opened upon this point alone, and go back to ascertain the facts, in regard to this subject.

How far the surety, after having such property assigned to pay the debt, or indemnify him against signing the note, could place himself in the same situation he was before, is a point of some difficulty.

Judgment reversed and case remanded.