RANKIN *et al.* v. WILSEY *et al.*

1. Surety: SUBROGATION. When a debtor has given any pledges or security to his surety, the creditor is entitled to the benefit of the same, and may, by proceedings commenced in equity, before the surety has surrendered or discharged the same, subject them to the payment or discharge of his debt.

2. —— PURCHASE BY SURETY. When the rents arising from certain property were pledged to the surety for the payment of the debt, and the

surety afterward became invested with the legal title to the property, it was held that the pledge was merged and could not be asserted by the creditor.

*Appeal from Lee District Court.*

THURSDAY, DECEMBER 8.

On the 5th day of May, 1860, the plaintiffs filed their petition in equity, setting up, in substance, that on the 21st day of November, 1857, the defendant, Wilsey, being owner of lots one, two and three, in block sixty-five, in Keokuk, Iowa, upon which he was building a large hotel, to be known as the Estes House, with stores, &c., sold and conveyed on that day to the defendant, Hornish, the undivided four-fifteenths of said property, for forty thousand dollars, and agreed to complete said building; that a further agreement, also embodied in said conveyance, was made by said Wilsey and Hornish, whereby Hornish was to furnish work, material and money, and indorse notes for Wilsey, not to exceed twenty thousand dollars, to enable him to complete the building, which money, &c., was to be refunded to Hornish; and for the payment of the same, and interest within five years, and for the payment of the principal and interest of a certain mortgage made by Wilsey to one Reid, for the purchase-money of the lots, so much of the annual rents and profits of the "Estes House" and store rooms, as shall be necessary for the payment of the same, were "severally pledged, set apart and applied for that purpose." The conveyance contained covenants of general warranty, except as to the Reid mortgage, "the payment of which is provided for as above," and was duly recorded on the day of its date. That afterwards, and on the 6th day of January, 1858, Wilsey sold and conveyed to Hornish the further undivided three and a half-fifteenths of said property, with covenants

of general warranty, "excepting the Reid mortgage, the payment of which is provided for in a deed to said Hornish, of date November 21st, 1857." That afterwards, and on the 21st day of July, 1858, Wilsey sold and conveyed to Hornish the remaining undivided one-half of said property, with like covenants of general warranty, "subject to the Reid mortgage and Thompson deed of trust."

The petition further states that the plaintiffs are the owners and holders of two of the notes made by Wilsey and indorsed by Hornish, under the agreement of November, 21, 1857, upon which they have obtained judgments, and executions have been issued and returned *nulla bona;* that Hornish has been and is now receiving the rents and profits of said Estes House and stores, and has perverted them from the purpose for which they were pledged, and to his own use.

Several of the tenants, as well as Wilsey and Hornish, are made defendants, and the petition asks the appointment of a receiver, to whom said tenants shall pay all rent due, and to become due, and who shall take charge of the property and rent the same and apply proceeds *pro rata* to the payment of plaintiffs' claims. The defendants, Hornish and Wilsey, filed their demurrer to the petition, which was sustained, and plaintiffs appeal.

*J. W. Rankin* for the appellants.

*H. Strong* and *John N. Rogers* for the appellees.

COLE, J.— It is an old and well settled rule in equity, that where the principal debtor has given any securities or

1. SURETY: other pledges to his surety, the creditor is entitled subrogation. to all the benefit of such securities or pledges in the hands of the surety, and may, in equity, subject them to the payment of his debt. Comyn's Digest, Chan. 4 D. C.; *Wright* v. *Morley*, 11 Vesey, 22; 1 Story's Eq. Jur.,

§§ 502, 638; *Moses et al.* v. *Murgatroyd et al.*, 1 Johns. Ch., 119; *Phillips* v. *Thompson*, 2 Johns. Ch., 418.

But, in order to entitle the creditor to reach such securities or pledges, they must be valid and subsisting securities in the hands of the surety at the time the creditor seeks to subject them; for the rights of such creditor are derived through, and not independent of, such surety. If, therefore, the surety who has thus availed himself of collateral securities or pledges, in good faith surrenders, releases or discharges them, before the creditor gives notice or takes steps, by equitable proceedings or otherwise, to subject them, such surrender, release or discharge, will defeat the equity of the creditor. In other words, the *trust* in favor of the creditor does not attach upon the execution or delivery of the securities or pledges, but *results* to him upon the failure of the debtor or surety in paying the debt.

The material inquiry, then, is, did the subsequent conveyance by Wilsey to Hornish, of the fee simple title to the entire property out of which the rents were to accrue, operate as a merger of the rents so pledged? In our opinion it did. The rule is, that whenever a greater estate and a less coincide and meet in one and the same person, without any intermediate estate, the less is immediately annihilated, or in the law phrase, is said to be *merged*, that is, sunk or drowned in the greater. 2 Blacks. Com., 177. This rule is invariable and inflexible at law, but in equity it is controlled by the expressed or implied intention of the party in whom the interests or estates unite. *James* v. *Morey*, 2 Cow., 246; *Wade* v. *Paget*, 1 Brown's Ch., 323 [368, marg.]; *Compton* v. *Oxenden*, 4 Id., 294 [403, marg.]; *Forbes* v. *Moffatt*, 18 Vesey, 384; *Gardner* v. *Astor*, 3 Johns. Ch., 53; *Gibson* v. *Crehore*, 3 Pick., 475; *Wickensham* v. *Reeves & Miller*, 1 Iowa, 413; *Wilhelmi* v. *Leonard*, 13 Id., 330; *Vannice* v. *Traer et al.*, 16 Id., 574. In this case, it is clear that the interest of Hor-

2. —— Purchase by surety.

nish did not require that the agreement to set apart the rents for the purpose specified, should be kept alive, and there was, therefore, no *implied* intention against the merger, and certainly there is none *expressed*. The party himself, by his defense in this case, denies that there was any express intention, and he is here resisting any implication of it. His intention, whether express or implied, need not become fixed and unchangeable until some one acquires an interest and thereby obtains a right to draw it in question; and until some person acquired an interest, he was at liberty to consider the pledge merged or not, as might be most beneficial to him. By his defense in this case, as well as by his interest, he makes his election in favor of the merger; and by his election, there being no express intention shown, we are to be governed.

The securities or pledges, then, which were held by Hornish, to indemnify him as surety for Wilsey, having been discharged by the merger of the rents, which were the less estate, in the greater, before the right of the creditor attached to the less estate so pledged, a court of equity will not revive the securities at the instance of the creditor, for the purpose of enabling him to subject them to the payment of his debt.

The question of fact, sought to be made available by the first ground of demurrer, as well as the question as to the rights of subsequent purchasers sought to be made by the third and fourth grounds of demurrer, do not legitimately arise upon the petition, and are therefore without any basis upon which to rest, and need no discussion here. As to the fifth and sixth grounds of demurrer, which are, in substance, that the rents, being something to accrue in future, and having no existence in fact, could not be the subject of a mortgage, it becomes unnecessary to determine, in view of the fact that upon the other grounds of the

demurrer already discussed, the judgment of the district court must be affirmed.

Upon a re-argument of this cause, it was insisted by counsel for appellant that the language of the instrument of conveyance and mortgage or pledge shows that it was executed for the benefit of others than Hornish, to wit: for the benefit of those who might, like the plaintiffs, become holders of the notes indorsed by Hornish, in pursuance of the agreement. While we must acknowledge the ability and force with which the argument was put by the counsel, yet upon a careful examination of the language of the instrument, and of the authorities referred to, we are of the opinion that such is not the fair and natural construction of the instrument.

The petition also states that the tenants who are made defendants, are paying rent to Hornish. If so, why have not the plaintiffs a complete remedy at law, by process of garnishment. However this may be, it is clear that the plaintiff's petition is based upon the right of subrogation solely, and not upon the ground that the instrument was made for their benefit, or that Hornish was in receipt of the rents.

Affirmed.