## RITTENHOUSE *v.* KEMP ET AL.

PRINCIPAL AND SURETY.—*Release.*—Where a surety on a promissory note, after his release from liability, by an extension of time given to the principal without his consent, receives an indemnity against his liability, without the knowledge of the holder, and subsequently surrenders the same to the principal, he may still avail himself of his discharge.

SAME.—*Indemnity.—Return of.*—The fact that the surety returned such indemnity, without the knowledge of the holder of the note, at a date anterior to a new extension of time being given without the consent of the surety, does not render the latter liable, where the holder of the note had no information in regard to the indemnity having been given to the surety when he extended the time of payment.

APPEAL from the Shelby Circuit Court.

DOWNEY, J.—Suit by the appellant against the appellees on the following writing obligatory:

"Twelve months after date we, or either of us, promise to pay Alexander Rittenhouse, or order, the sum of two thousand and two hundred dollars, for value received, without any relief from valuation or appraisement laws whatever.

"DAVID KEMP. [SEAL.]
"December 11th, 1865. JACOB FOX. [SEAL.]"

Fox answered, separately, first, that he was only security on the obligation for Kemp, which fact was known to Rittenhouse, and that Rittenhouse, by agreement with Kemp,

Rittenhouse *v.* Kemp *et al.*

in consideration of the payment, in advance, of interest at the rate of ten per cent. per annum, extended the day of payment three several times without his knowledge or consent. The first agreement to extend the time is alleged to have been made on the 15th day of March, 1867, until the 31st day of December, 1867; the second on the 28th day of July, 1868, until the 1st day of January, 1869; and the third on the 1st day of March, 1869, for six months from January 1st, 1869.

The second paragraph is the same as the first, except that it alleges the extensions of payment, as follows: the first on the 15th day of March, 1867, from December 11th, 1866, to December 11th, 1867; the second on the 28th day of July, 1868, from December 11th, 1867, until December 11th, 1868; and the third on the 1st day of March, 1869, from December 11th, 1868, until December 11th, 1869. It is alleged that the sum of two hundred dollars was paid by Kemp to Rittenhouse at the date of each agreement, except the last, at which time one hundred dollars was paid, and a like sum agreed to be paid.

The plaintiff met these defences of Fox by pleading, first, the general denial; second, that on the —— day of May, 1868, and after Fox became a maker of said note, Kemp delivered to and deposited with Fox, for the purpose of indemnifying and saving harmless said Fox from liability and loss on account of said note, and for the purpose of paying off the same, a certain note dated the —— day of ——, 1867, and made by William Aiken and others, by which they promised to pay to Hiram Solomon five thousand dollars on or before the 25th day of December, 1868, which note said Solomon assigned to Matilda Kemp, the wife of said David Kemp, on the —— day of ——, 1868, who afterward handed said note to said David Kemp, to be by him deposited with said Fox as security, and to indemnify him as above stated, and that he, the said Fox, should pay over the proceeds of said note to said plaintiff, in satisfaction of the note on which this suit is brought; and that Kemp did so

deliver said note to said Fox, who received the same; that said note was, at all times, fully sufficient to indemnify said Fox against the payment of the note sued on, and to pay off and satisfy the same; and that Fox, without the knowledge or consent of the plaintiff, on the 8th day of January, 1869, placed said note in the hands of said David Kemp for col-'lection, and that he afterward, and before the commencement of this suit, received full payment of the same, but that no part of the money had been applied to the payment of the note sued on; wherefore, etc.

A demurrer was filed to the second paragraph of this reply and sustained, and the point was reserved by a proper exception.

Kemp and Fox united in an answer, alleging payment, on which issue was taken by general denial.

There was a trial by the court, finding in favor of Fox, and against Kemp, motion by the plaintiff for a new trial overruled, and judgment on the finding.

But two errors are properly assigned; first, the sustaining of the demurrer to the second paragraph of the reply; and second, the refusal to grant a new trial.

There is no controversy as to the sufficiency of the paragraphs of the answer of Fox.

The whole case resolves itself into the single question as to the sufficiency of the second paragraph of the reply. If that was sufficient to avoid the matters set up in the answer of Fox, then the judgment should be reversed. If not, it should be affirmed. The note of Aiken and others was the property of Mrs. Kemp, but we shall assume, as we think we must, that she, notwithstanding she was a *feme covert*, could legally place it in the hands of her husband, so as to enable him to bind her, by delivering it to Fox as security or indemnity to him, as the surety of her husband, and give him a valid right to collect it from the makers, and apply the proceeds according to the agreement.

It will be seen from the dates given that Mrs. Kemp did not acquire the note of Aiken and others from Solomon

until 1868, and consequently could not have delivered the same to her husband, nor could he have delivered the same to Fox, before that time. Prior to this time, according to the allegations of the answer, and we may as well remark, according to the evidence also, that is to say, on the 15th day of March, 1867, the note having previously matured, the contract was made between Rittenhouse and Kemp, without the knowledge or consent of Fox, for the first extension of the time of payment of the note, and by such extension Fox had been discharged from liability on the note. This gives rise to the question, did the receiving of that note by Fox, after he had been so discharged, revive his liability to the plaintiff, or does it prevent him from setting up the fact of such extension in his discharge?

It is not doubted that a promise by the security, after he has been thus discharged, with a knowledge by him of the discharge, will, without any new consideration, revive his liability. This is established by the following and other authorities: *Fowler* v. *Brooks*, 13 N. H. 240; *Woodman* v. *Eastman*, 10 N. H. 359; *The Bank* v. *Johnson*, 9 Ala. 621; *Thornton* v. *Wynn*, 12 Wheat. 183; *Creamer* v. *Perry*, 17 Pick. 332. But in this case, nothing is shown, except the receipt of the collateral, a promise to apply its proceeds to the payment of the debt, and the surrender of the collateral security. No promise by Fox to Rittenhouse to pay the debt is alleged, and we think none can be implied merely from the taking of the note as security under the agreement as alleged. If it had been alleged that Fox knew that the time of payment of the note mentioned in the complaint had been extended, there would have been more reason for contending that the taking of the indemnity by him would have made him liable. Had he not been already discharged before receiving the security, and had he still retained the same, the authorities are numerous that the giving of the time would not have discharged him. *Moore* v. *Paine*, 12 Wend. 123; *Eastman* v. *Foster*, 8 Met. 19; *Chilton* v. *Robbins*, 4 Ala. 223.

But in *Fowler* v. *Brooks*, *supra*, where, after his discharge,

by extending the time of payment, the security had taken from the principal two colts and two notes against a third person, for which he gave a receipt engaging to pay that amount on the note in suit, and where afterward this receipt had been given up and a new one given to account for the property on his liabilities as surety for the principal, the court held that these facts did not prevent the surety from setting up his discharge by the extension of the time for payment. PARKER, C. J., who delivered the opinion, said: "But the fact that the surety takes security from the principal, to indemnify him against his liability on the note, without any communication with the creditor, is not a renewal of his promise. It is perfectly consistent with a determination to avail himself of his right to a discharge. It may well be but a wise precaution against the contingency that he may not be able to substantiate his claim to be exonerated from the payment of the debt."

It is settled that the securities held by the surety, to indemnify him against the payment of the debt, are held by him in trust for the payment of the debt, and that the creditor may resort to them for payment of the debt. *Curtis* v. *Tyler,* 9 Paige, 431; *Green* v. *Dodge,* 6 Ohio, 80; *Eastman* v. *Foster, supra.*

In *Wilson* v. *Wheeler,* 29 Vermont, 484, where the surety received from the payee the money for which the note was given, and retained it until one of the principals gave him a note against a third person for his indemnity in so signing, and he then paid it over to the principals; and they afterward made an agreement with the holder of the note, by which he extended the time of its payment, without the consent of the surety, or of the person whose indemnity note he held, it was held that neither the circumstance of the sureties having received the money, nor his holding the indemnifying note, prevented his availing himself, as a surety, of the extension of the time of payment as a discharge of his liability.

But it is alleged that the note of Aiken and others was re-

Rittenhouse *v.* Kemp *et al.*

turned to Kemp, on the 8th day of January, 1869, without the knowledge or consent of the plaintiff; and the answer alleges that the third extension of the time of payment took place on the 1st day of March, 1869, which was at a time when Fox had no indemnity in his hands. The allegation, that the note was returned by Fox to Kemp without the knowledge or consent of the plaintiff, can add nothing to the reply, inasmuch as it is not made to appear that the plaintiff ever knew that the note was held by Fox at any time. The plaintiff could not, therefore, have acted on the supposition that Fox was liable to him, although Kemp might become insolvent, on account of his having in his hands security for the payment of the debt, for it does not appear that he knew of the existence of any such security. It was not, therefore, in this view of the case, any damage to the plaintiff that Fox returned the note to Kemp. *Rankin* v. *Wilsey*, 17 Iowa, 463; *Smith* v. *Estate of Steele*, 25 Vt. 427.

We do not decide anything on the question whether or not the plaintiff could avail himself of the promise made by Fox when the note was placed in his hands, that he "should pay over the proceeds of said note to said plaintiff, in satisfaction of the note on which this suit is brought," which is so timidly alleged in the reply. What we do decide is, that the matters set up in the reply do not prevent or estop the defendant Fox from setting up his discharge by the agreements to extend the time of payment of the note in suit, as alleged in the answer.

There is no good reason for saying that the verdict was not supported by the evidence. The note on its face provided for the payment of no interest. The indorsements on the note and the parol evidence show the extensions of the time of payment as alleged in the answers of Fox, and the payment of the ten per cent. interest was a sufficient consideration.

The judgment is affirmed, with costs.*

*Major & Major*, for appellant.

*B. F. Davis* and *B. F. Love*, for appellees.

*Petition for a rehearing overruled.