WOODWARD ET AL. V. DAVIS ET AL.

1. **Mortgage:** LIEN OF: MERGER IN LEGAL TITLE. The lien of a mortgage is not merged in the legal title acquired by the mortgagee, where it is his intention that it shall not so merge, and in the absence of evidence his intention will be presumed to accord with his interest. A stipulation by a mortgagee, who took a conveyance of the property from the mortgagor in satisfaction of his debt, that he would procure the release of the property from a certain lien junior to his mortgage, was held not to bind him to pay the claim of such lien holder, nor to render the lien superior to that of his mortgage, but simply to release the grantor from any obligation to remove it.

*Appeal from Scott Circuit Court.*

FRIDAY, JUNE 11.

B. B. WOODWARD, as trustee, being the holder of three mortgages upon lot one, and the west twenty-four feet of lot two, in block fifty-seven in the city of Davenport, commenced his action of foreclosure, making George L. Davenport, the mortgagee, and other parties who were interested as lien holders, parties defendant. John S. Davis, one of said defendants, held a mortgage upon the same property, which was junior to the mortgages held by Woodward. George A. Davenport had two judgments against said George L. Davenport, amounting in the aggregate to over $10,000, all of said mortgages and the judgments amounting to over $160,000.

N. H. Coykendall & Company, who were made defendants, had a judgment for the sum of about $1,800, which was junior to all of the above mentioned mortgages and judg-

ments. The judgment of Coykendall & Company was rendered in the District Court of Scott county on the 9th day of October, 1876. Before the commencement of this action two suits were pending in the District Court, one of which was for the foreclosure of the mortgage to John S. Davis, and the other was an action of John S. Davis against C. S. Whisler and said George L. Davenport. On the 21st day of April, 1877, these suits were compromised by the parties, and an adjustment was made of the amount due on the mortgage to John S. Davis, and Davenport conveyed to said Davis a part of the above described real estate for the consideration of $10,000, which was applied in part payment of the mortgage. Time was extended upon the balance due on the mortgage. The property conveyed by Davenport to Davis was under lease to certain parties at the rate of $1,000 a year. The lease was assigned to Davis, and after that he received the rents. By the terms of said compromise Davenport was to have the property which was conveyed to Davis released from the liens of the mortgages held by Woodward as trustee and the judgments in favor of G. A. Davenport, and " Davis was to have his attorneys obtain necessary release of the Coykendall judgment." All of these releases were obtained excepting that of the Coykendall judgment. It was provided in said compromise (a memorandum of which was reduced to writing) that the suits then pending should be dismissed, and time was extended for two years upon the balance due on the Davis mortgage.

When this action was commenced, to foreclose the mortgages held by Woodward as trustee, the defendants Coykendall & Company, and the administrators of John S. Davis, who had deceased, made no issue as to the Woodward mortgages being prior and superior to any of the liens held by them, but by cross-petitions and answers thereto it was claimed upon the part of Coykendall & Company that the conveyance from Davenport to Davis of part of the mortgaged property operated as a merger of the mortgage in the legal title, and that

the lien of their judgment thereby became paramount to any interest, lien or claim of Davis in the premises conveyed by Davenport to him.    It was further claimed that by the said compromise Davis undertook and assumed to pay the Coykendall judgment, and that because of such undertaking the said judgment was a prior lien upon the property conveyed. These allegations and claims were denied by the administrators of Davis, and it was contended by them that the mortgage and legal title were not merged by the compromise, but that as to junior lien holders the mortgage was still a prior and superior lien.    The cause was tried upon its merits upon these issues, and it was decreed that the judgment of Coykendall & Company was superior and paramount to any claim held by the administrators of said Davis upon the real estate so conveyed by Davenport to Davis, because the mortgage of Davis was by said Davis canceled and paid *pro tanto*, and the mortgage became merged in the title acquired by said conveyance.    The administrators of Davis appeal.

*Cook & Richman,* for appellants.

*Hirschl & Preston,* for appellees.

ROTHROCK, J.—There is but a single question presented in this record for our determination.    It is this:    Was the mortgage held by Davis merged in the legal title taken by him by the conveyance from Davenport?    If it was not so merged, and if Davis notwithstanding the conveyance was entitled, as against junior incumbrancers, to set up the mortgage as a prior lien, the decree of the court below was erroneous.    It is proper to say in the outset that there is nothing in the record to justify an inquiry into the good faith or fairness of the compromise made by Davis and Davenport.    It is true there appears to have been usurious interest included in the mortgage, but so far as appears the usury was deducted when the compromise was made.    We say this much without determining the right of

*[margin note: 1. MORTGAGE: lien of : merger in legal title.]*

appellees to raise the question of usury, and have only thought proper to mention it because it is urged in argument by counsel for appellees.

It is a general rule, and one abundantly established by authority, that where a mortgagee receives a conveyance of the mortgaged property his mortgage will not merge in the legal title, but will be kept alive to enable him to defend under it against the title or lien of another acquired after the execution of the mortgage, if such protection is to the interest and consistent with the intention of the mortgagee, and in the absence of evidence to the contrary his intention will be presumed to correspond with his interest. *Wickersham v. Reeves & Miller*, 1 Iowa, 413; *Wilhelmi v. Leonard*, 13 Id., 330; *Linscott v. Lamart*, 46 Id., 312; *First National Bank of Waterloo v. Elmore*, 52 Id., 541; *Stimpson v. Pease*, *ante*, 572; Jones on Mortgages, Vol. 1, § 874.

The written agreement between Davis and Davenport, by which the compromise of said suits was effected, contains this stipulation: "The said Davenport is to have the said real estate released from the liens of the sheriff (Woodward) mortgages and George A. Davenport's judgments, and said Davis to have his attorney obtain necessary release of the Coykendall judgment." The real estate mentioned in this contract was that conveyed to Davis, and which is now the subject of controversy. It is averred in the cross-petition of Coykendall & Company that Davis assumed the payment of the judgment; no such obligation seems to have been created by this contract. It was no more than an undertaking upon the part of Davis to protect himself against that judgment. If he had procured a formal release of it without payment, the judgment would still have remained unpaid, and his contract with Davenport would have been performed. It appears in evidence that all of the senior lien holders released their liens upon this property without payment, and it further appears that it was thought by the parties that Davis could procure through his attorney a release of this judgment with-

out payment of it, because his attorney was also the attorney of Coykendall & Company. As one of the witnesses who was present at the settlement expresses it, Davis "took his chances" so far as the Coykendall judgment was involved in the transaction.

Under this state of facts it was clearly to the interest of Davis to hold the mortgage lien as a protection against the judgment. That such was his intention can admit of no question. It cannot be believed that he intended voluntarily to give up and surrender his senior mortgage lien to be postponed to the lien of a junior judgment to the amount of $1,900. He was under no obligation to Davenport to make such a sacrifice, and his interest was clearly against it, and we think his intention was consistent with his interest.

REVERSED.