GEORGE W. O'BRIEN, Appellee, v. JOE B. GERBRACHT, Appellant.

**MORTGAGES:** Merger and Extinguishment of Debt. Record reviewed, and held insufficient to present a jury question on the issue whether

a vendor of. real estate had, subsequent to the sale, so dealt with
the property as to repurchase the same, and had thereby, under the
doctrine of merger, canceled the notes given for the purchase price.

*Appeal from Story District Court.*—R. M. Wright, Judge.

NOVEMBER 20, 1923.

ACTION upon a promissory note. Judgment for plaintiff
upon a directed verdict. Defendant appeals.—*Affirmed.*

*John Y. Luke,* for appellant.

*R. E. Nichol,* for appellee.

STEVENS, J.—This is an action upon a promissory note for
$1,000, secured, when executed, by a second mortgage upon Lots
18 and 19, Block 10, Ames, Iowa. The jury must, or by permis-
sible inferences could, have found that, on or about May 27,
1915, appellant purchased the above described property from
appellee for $7,500, $500 of which was paid in cash, and that a
note for $7,000, together with a mortgage on said premises to
secure the payment thereof, was executed by appellant to ap-
pellee; that later, the note in suit for $1,000 was executed to ap-
pellee, together with a second mortgage upon the property, to
secure payment thereof, and $1,000 was credited upon the orig-
inal note; that appellee sold and assigned the $6,000 note and
mortgage to the Commercial Savings Bank of Ames; that, on
October 3, 1917, appellant conveyed the property to Byron M.
Munyon, for an expressed consideration of $10,000, receiving
in exchange a deed to other property, which deed expressed a
consideration of $3,000; that, on November 30, 1917, Munyon,
at the request of Charles B. Ash, a real estate dealer, executed
a deed, blank as to grantee, for an express consideration of
one dollar and other good and valuable consideration, and de-
livered the same to the said Ash; that, some time thereafter,
Munyon signed a written instrument, authorizing appellee to
insert. the name of anyone he desired, as grantee in the deed;
that, on or about April, 1919, Ash delivered this instrument and
the deed in blank to appellee; that no consideration was paid

Munyon for the deed, by either Ash or appellee; that, prior to the execution of the deed, the Commercial Savings Bank had commenced action to foreclose the $6,000 mortgage assigned to it by appellee, and that, prior to the actual delivery of the deed to appellee, the property had been sold in the foreclosure proceedings, and on November 28, 1919, a sheriff's deed conveying the same to the bank was executed by the sheriff of Story County; that, at the time, Ash informed appellee (which, as stated, was before the deed from Munyon was procured) that a conveyance could be obtained from him without the payment of any money; that appellee stated to Ash that the property was not worth to exceed the mortgage, and that he would pay nothing therefor; and that he never obligated himself to pay the incumbrances upon the property, in consideration for the deed in blank from Munyon.

The record does not disclose whether Munyon, at the time of the purchase of the property from appellant, assumed and agreed to pay the incumbrances, or that he was otherwise bound or obligated for the payment thereof. As stated, the consideration expressed in the deed was $10,000. Presumably, the two mortgages were taken into consideration in the exchange, as the deed conveying to appellant what is referred to in the evidence as the Pammel property recited a consideration of only $3,000.

In stating the inferences that the jury may have drawn from the evidence, we have not attempted to distinguish between that which is favorable and that which is unfavorable to appellant. Of course, he is entitled to have the facts interpreted most favorably to him.

Appellant, for defense, relied wholly upon the doctrine of merger. Were the action in equity, effect would be given to the intention of the parties, and, upon the record before us, the doctrine of merger would clearly have no application. *Moore v. Olive,* 114 Iowa 650; *Woodward v. Davis,* 53 Iowa 694; *Linscott v. Lamart,* 46 Iowa 312; *Rankin v. Wilsey,* 17 Iowa 463; *Shimer v. Hammond,* 51 Iowa 401; *Sherlock v. Thompson,* 167 Iowa 1.

The rule at law is somewhat different; and notwithstanding the tendency of the courts to apply the same rule at law as in equity, and of lawmaking bodies to abolish the common-law distinction by statute, a merger will be held to have resulted at

law when it would not be given that effect in equity. *Rankin v. Wilsey*, supra; *Sherlock v. Thompson*, 167 Iowa 1; *Commonwealth v. Evans*, 25 Pa. Sup. Ct. 239; *Forthman v. Deters*, 206 Ill. 159 (69 N. E. 97).

When appellant is given the benefit of the most favorable interpretation of which the evidence is susceptible, could a verdict, if one were returned in his favor, be sustained? Notwithstanding that the property had been sold to the bank at sheriff's sale, in the foreclosure proceedings, Munyon, at the time he executed the deed in question, was the owner of both the legal and equitable titles, subject to the lien of the bank. *Greenlee v. North British & Merc. Ins. Co.*, 102 Iowa 427.

The above case overruled our prior holding in *Shimer v. Hammond*, supra, that a purchaser at execution sale acquires the equitable title to the property. It being conceded, for the purpose of this case, without, however, being so held, that, if appellee acquired title to the property by conveyance from Munyon, he cannot be permitted to say in an action at law that he did not intend that the debt of appellant should be extinguished thereby, this does not preclude him from having all of the facts relating to the transaction considered, so far as applicable, in ascertaining whether he received the deed with the intention of becoming a purchaser, or only, as claimed by him, for the purpose of aiding in a sale of the property. If the matter of intention in this respect is of controlling importance, then doubtless a question was presented for the jury. Munyon, as a witness for appellant, testified that he received nothing from Ash or from appellee for the deed. Appellee paid Ash nothing therefor. Ash knew, at the time of the first conversation with appellee, that Munyon had volunteered to convey the property to the bank without consideration, so as to avoid the expense and necessity of foreclosing the mortgage. The bank evidently preferred to foreclose the mortgage, as thereby appellee would be compelled to redeem, or suffer the loss of his security for the note in suit. As stated, the property was not redeemed from the foreclosure sale, and the bank obtained a sheriff's deed therefor. The deed from Munyon, according to the testimony of Ash, was left blank as to the grantee, at the request of appellee. Ash testified that appellee told him he would not purchase the property; that he

would pay nothing therefor; that its value did not exceed the amount of the mortgage. The record tends to corroborate him on this point. Appellee knew of the foreclosure proceedings, and must have known that a sheriff's deed would be executed to the bank unless redemption was made either by himself or by Munyon.

To sustain the defense of merger, the evidence must be such, at least, as that the jury could have found therefrom that appellee, in fact, purchased the property, and that the equitable title, at least, vested in him. He had only to insert his own name in the deed, to perfect the legal title in him. It seems to us that the evidence clearly shows that he had no intention of acquiring title to the property for himself. The conveyance from appellant to Munyon was obviously intended as an exchange of his equity in the property for the Pammel property. It is not shown whether the Pammel property was incumbered or not. The consideration expressed in the deed therefor is $3,000. The jury could not, upon the record before us, have found that Munyon obligated himself to pay the incumbrances upon the lots conveyed to him: he neither gained nor lost, so far as the record shows, by the execution of the deed. There is nothing in the record to justify an inference that appellee agreed, in fact or impliedly, to pay the incumbrances upon the property. So far as the evidence shows, the payment of the incumbrances was a matter of no concern to Munyon. It was of some concern to appellee, who had received but $6,500 of the agreed consideration for the deed to appellant. A thousand dollars of the consideration remained unpaid. No name was ever inserted in the deed, as grantee, nor was any effort made by appellee, either to negotiate a sale of the property or to redeem from the judgment in the foreclosure action. A verdict in appellant's favor, upon the above record, could not have been sustained, and, if one had been returned, a new trial must have been granted. The evidence wholly fails to show that appellee became a purchaser of the property, or that he acquired title thereto by the transaction in question. In such circumstances, a merger could not have taken place. No fact question was presented for the jury to pass upon.

The ruling below upon appellee's motion for a directed verdict was right, and the judgment is, accordingly,—*Affirmed.*

PRESTON, C. J., EVANS and DE GRAFF, JJ., concur.