GUARANTY LIFE INSURANCE COMPANY, Appellee, v. FARMERS MUTUAL INSURANCE ASSOCIATION, Appellant.

No. 44263.

APRIL 5, 1938.

Carroll Brothers and Byington & Rate, for appellee.

S. W. Livingston and Putnam, Putnam, Fillmore & Putnam, for appellant.

MILLER, J.—On September 26, 1928, one D. F. Gingerich was the owner of the east half of the northwest quarter (E. ½, N. W. ¼) and the west half of the northeast quarter (W. ½, N. E. ¼), of section 15, township 78, range 7, in Johnson county, Iowa, and on said date the appellant herein issued to said D. F. Gingerich its policy of insurance, therein insuring the buildings located on said real estate against loss or damage by fire, wherein a certain dwelling house was insured in the sum of $3,000. At the time of the execution of said policy said real estate was covered by a mortgage in favor of appellee herein, in the sum of $16,000, and attached to said insurance policy was a loss payable clause being the "Uniform Standard Iowa", or the "National Board Standard Mortgage Clause" form, wherein it was provided that "loss, if any, payable to Guaranty Life Insurance Company, Davenport, Iowa, as mortgagee (or trustee) as such interest may appear." Said standard mortgage clause likewise contained the following provisions:

"This policy, as to the interest therein of the said payee, as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property nor by the commencement of foreclosure proceedings, nor the giving of notice of sale relating to the property, nor by any change in the interest, title, or possession of the property, nor by any increase of hazard; * * * and Provided further that the mortgagee (or trustee) shall notify this Company of the commencement of foreclosure proceedings, and of any notice of sale relating to the property, and of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, the same shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for any increased hazard; * * * Failure upon the part of the mortgagee (or trustee) to comply with any of the foregoing obligations shall render the insurance under this policy null and void as to the interest of the mortgagee (or trustee)."

Said policy contained the articles of incorporation of appellant, and article XII thereof reads as follows:

"When the title to property insured in this Association is transferred by deed or order of Court, the policy thereon becomes void and the Association shall not be liable thereon."

Thereafter, on March 13, 1933, appellee instituted a foreclosure action upon the mortgage above referred to, therein making D. F. Gingerich and others holding interests or liens upon said premises parties defendant. Appellee notified appellant of the institution of such foreclosure proceedings, and appellant consented that such foreclosure would not invalidate said policy. In said foreclosure action two continuances were granted under the moratorium statutes, and voluntary arrangements made between appellee and Gingerich relative to the occupancy of the land.

Following the granting of these continuances, negotiations were conducted between appellee and Gingerich relative to relinquishment by Gingerich of the farm as a tenant, and relative to redemption by Gingerich and the possibility of a resale thereof to Gingerich, even after foreclosure, which negotiations culminated in said appellee and Gingerich, on December 3, 1935, entering into a written stipulation by the terms of which Gingerich, for and in consideration of the sum of $500, agreed to execute and deliver to appellee a quitclaim deed therein conveying the property above described, and in which stipulation appellee agreed to dismiss the foreclosure then pending and return to Gingerich the notes and a release of mortgage executed by him in favor of appellee, upon the condition that, if there was any lien upon said real estate subsequent to the mortgage of appellee, then the foreclosure suit would not be dismissed, but would proceed to sheriff's sale and sheriff's deed, and the notes would then be deposited in the office of the clerk of the district court of Johnson county for cancellation. In accordance with said stipulation, Gingerich did execute and deliver to appellee his quitclaim deed, therein conveying said described real estate to appellee, which deed was from then on retained by appellee, but was not filed for record. Appellee then ascertained that there were liens upon the real estate involved subsequent to its mortgage, and proceeded with its foreclosure action, which action went to decree on January 3, 1936, following which

the real estate was sold at sheriff's sale, and sheriff's certificate issued to appellee as the purchaser.

Appellant's first knowledge of the execution and delivery of said quitclaim deed was received on April 18, 1936, on which date Gingerich called at the office of appellant, informed appellant of the execution and delivery of the quitclaim deed, and requested that appellant cancel the policy in question. Thereafter, on April 21, 1936, appellant wrote appellee requesting the return of the policy for cancellation, followed by a letter from appellee inquiring upon what ground appellant was asking for cancellation; followed in turn by a letter from appellant stating Gingerich had requested the cancellation thereof. Thereafter, on April 24, 1936, the dwelling house above referred to was destroyed by fire, and on April 25, 1936, appellee wrote a letter to appellant informing appellant of the execution of said deed and instructing appellant to make settlement and adjustment with appellee only. Proof of loss was thereafter furnished, and, following appellant's refusal to make payment to appellee for said loss, appellee filed its petition in equity, therein praying for decree giving appellee judgment in the sum of $3,000, with interest, and that the court enter an order requiring appellant to make such assessment and collection of premiums as would be necessary to pay such judgment. Upon trial in the district court, judgment and decree was entered in favor of appellee as prayed for by it, from which judgment and decree appellant has appealed to this court.

It was stipulated that the dwelling which was destroyed by fire was of the value of $3,000, and that said dwelling was covered by insurance in said amount of $3,000 in the policy involved.

■■■ Appellant in an amendment to its answer alleges that the policy in question was not in force and effect at the time of the loss on account of its cancellation thereof on April 21, 1936. The facts in connection with this claimed cancellation are set out above, and establish that on April 21, 1936, appellant wrote appellee requesting the return of the policy for the purpose of canceling same; and likewise establish that said policy was not in fact returned, but that said letter of April 21, 1936, was followed by correspondence relative to the ground upon which appellant desired to cancel the policy. Even if it is contended that this letter should be construed as a cancellation on

the part of appellant, yet the same cannot be urged as a cancellation affecting appellee, for the reason that the standard mortgage clause in question contains the following provision:

"This insurance may at any time be cancelled as to such mortgagee (or trustee) interest by giving the mortgagee (or trustee) a ten days written notice of such cancellation."

These facts establish that such attempted cancellation, on the part of appellant, was not consented to by appellee, and as less than ten days intervened between said letter and the date of the fire in question, appellant's claim of cancellation is without merit.

 It is contended by appellant that the execution and delivery of the quitclaim deed constituted a transfer of the title, and that therefore in compliance with the provisions of article XII of the articles of incorporation, as set out above, said policy became void and the appellant was not liable thereon.

In the consideration thereof it is to be recalled that we are not concerned with simply a loss payable clause, but what is designated as the "National Board Standard Mortgage Clause", which constitutes an independent contract of insurance between the insurer and the mortgagee. This particular standard mortgage clause is sometimes referred to as the "New York" or "Union" mortgage clause, and the same has heretofore been construed by various courts of last resort.

In the case of Union Central Life Ins. Co. v. Franklin County Farmers Mut. Ins. Assn., 222 Iowa 964, 965, 270 N. W. 398, 399, Mr. Justice Mitchell gives quotations from various jurisdictions, wherein this standard mortgage clause has been construed, and from a reading thereof it will be readily ascertained that this clause has been uniformly construed to constitute an independent and new contract between the insurer and the mortgagee, which removes the mortgagee beyond the control or effect of any act or neglect of the owner of the property. As the result thereof, we are confronted, not with the contract between the insurer and owner, but with the independent contract between the insurer and the mortgagee.

In the above-cited case, this court was concerned with the question of interpreting the standard mortgage clause. There, as in the instant case, the premises of the insured were covered by a mortgage, and likewise, attached to the policy, was the

standard mortgage clause in favor of the mortgagee, which provided among other things that the mortgagee should notify the insurance association of the commencement of foreclosure proceedings, or of any notice of sale or of change in ownership of the property which came to the knowledge of the mortgagee; and wherein the by-laws of the association, which were made a part of the policy, contained a provision that:

"In event of sale the Association shall at once be notified and the policy sent in for cancelation or assignment, subject to approval of the secretary, and failure to obtain such approval shall invalidate the policy."

However, in that particular case no foreclosure action was instituted, but the insured, being unable to meet his indebtedness, conveyed by warranty deed his entire interest in the real estate to the mortgagee, and no notice whatever of such conveyance was given the insurer until after the fire loss. Therein it was held that the conveyance from the insured to the mortgagee did not constitute such a change of ownership as to invalidate the policy, but that the same merely constituted an increase in the interest of the mortgagee, and not a change of ownership; that the insurer had theretofore passed upon and accepted the mortgagee as a proper party with whom to contract, and that as a result thereof the insurer is not permitted to complain because the interest of such party has been increased. In the opinion therein the following language is used:

"In the case of Employers' Fire Ins. Co. v. Ritter, 112 N. J. Eq. 418, 164 Atl. 426, the owners mortgaged the property to Barbara Ritter. The Employers' Fire Insurance Company issued its fire policy to the owners. Attached to the policy was a standard mortgage clause payable to the mortgagee, as her interest might appear. The mortgage was foreclosed, and at the sale the mortgagee bought the property. Sheriff's deed was duly issued and recorded. Nine months thereafter the buildings on the property were destroyed by fire. The insurance company paid the loss without knowledge of the change of ownership, and on learning of such fact, sued to recover. The court below denied recovery and the appellate court affirmed the decree. Speaking of the standard mortgage clause, the court said at page 428 [of 164 Atl.]:

" 'No new person became a party to the insurance contract at the foreclosure sale, and there was no change of risk except by the withdrawal of the interest of the mortgagor and the increase of the amount of interest of the mortgagee. The parties to the contract were the same after the sale. The foreclosure did not constitute such a change of ownership as would invalidate the policy, though no notice of such foreclosure was given to the company.'

"In the case at bar we have no foreclosure of the mortgage. We have a friendly arrangement, whereby the mortgagee took title to the property. There was an independent contract between the Insurance Association and the mortgagee. Under the standard mortgage clause which was attached to the policy no new risk was involved. The insurer has already passed upon and accepted the mortgagee as a proper party with whom to contract, and it cannot complain that its interest is increased. The provision that notice of foreclosure or of sale must be given, is in response to the feeling that where adversary proceedings are brought there may be some adversary feeling on the part of the mortgagor or a temptation to cash in on his property before it is lost thru foreclosure. No such considerations would dictate a requirement of notice of enlargement of title in the mortgage. This was simply an enlargement of the insured's title, and it cannot void the policy.

"This court had before it a similar question in the case of Esch Bros. v. Home Ins. Co. of New York, 78 Iowa 334, 43 N. W. 229, 16 Am. St. Rep. 443. On page 343 of 78 Iowa, page 232 of 43 N. W., this court said:

" 'It remains to be determined whether the policy, as reformed, has been broken by reason of the change in title, resulting from Bridget Donegan's failure to redeem. This was not a diminution of the interests of the assured, but an increase, and hence not a breach of the policy. See Bailey v. Insurance Co., supra [(C. C.) 13 F. 250], and authorities cited therein.' "

The application of the rules of law as determined in the above-cited case compels the finding that the execution and delivery of the quitclaim deed does not constitute such a change of ownership as to relieve appellant of liability under its separate and independent contract with appellee.

■■■ It is, however, contended by appellant that under the

provision of said loss payable clause appellee was limited in its recovery as a mortgagee only, and that appellee's identity as a mortgagee only had ceased to exist prior to the fire loss in question; it being the claim of appellant that the proceedings culminating in the execution and delivery of the quitclaim deed resulted in the complete extinguishment of appellee's identity as a mortgagee, and resulted in appellee's identity being that of owner only; or that such proceedings resulted in a merger of the insured's interest with the interest of the plaintiff, and that therefore appellee was not entitled to recover for the reason that under the "standard mortgage clause" appellee's recovery was limited to that of a mortgagee only.

In connection with this claim of appellant it is to be recalled that the stipulation entered into between appellee and Gingerich provided for a dismissal of the foreclosure action and the return of the note and mortgage in the event only that there were no junior liens, and on account of the fact that there were junior liens against the real estate involved the foreclosure action was not dismissed, and likewise the note and mortgage were not delivered to Gingerich. Regardless of the fact that it might be claimed that through the execution of said deed Gingerich relinquished any right of redemption, there still existed the right of redemption on the part of all junior lienholders, and certainly it cannot logically be said that the status of the appellee herein as mortgagee had ceased to exist. It seems to us that the status of appellee as a mortgagee was still in existence, and of necessity must continue to exist until the period of redemption had fully expired and sheriff's deed had issued to the mortgagee.

If the contention of appellant as to the effect of the execution and delivery of the quitclaim deed is to be adopted, it will of course result in a complete merger of the mortgage in the legal title, resulting in appellee's title being junior to all liens and encumbrances placed against the real estate subsequent to the recording of appellee's mortgage. Such result unquestionably would be inconsistent with the interests of appellee, and the stipulation between appellee and Gingerich conclusively establishes that such was not the intention of appellee. Likewise, the law is well established that a merger will not be construed to exist if the same is against the interest and inconsistent with the intention of the mortgagee; and in the absence of evidence to the contrary the mortgagee's intention will be construed

to correspond with his interest. Andrew v. Woods, 217 Iowa 453, 252 N. W. 112; Woodward v. Davis, 53 Iowa 694, 6 N. W. 74; Harrington v. Feddersen, 208 Iowa 564, 226 N. W. 110, 66 A. L. R. 59.

The able and learned trial court in his ruling makes the following statement: "The facts in the instant case are stronger, more persuasive and more imperative of granting equitable relief to the plaintiff herein than were the facts favoring plaintiff in the case of Union Insurance Co. v. Franklin County Farmers Mut. Ins. Assn.", and a comparison of the situation therein with the situation in the instant case causes us to give our wholehearted approval to that statement.— Affirmed.

STIGER, C. J., and all Justices concur.