No. 69.—THE TRUSTEES OF HOWARD COLLEGE, plaintiffs in error, *vs.* DAVIS PACE, defendant in error.

[1.] Under the sixth section of the Judiciary Act of 1799, the motion to produce, may be made at any time after the expiration of ten days from the service of the notice to produce; and whenever so made, the motion should be heard and granted, unless sufficient cause be shown to the contrary.

[2.] "Where money is paid by A, into the hands of B, to remain at the disposal of C, the right to that money continues in A, until B *gives*, and C *takes* credit for it, or B actually pays it to C; up to this period, B is the agent of A only, and A may countermand the authority, to make the payment; in the same manner as a person who sends another to pay money, may stop him before he arrives at the place where it is to be paid, and require him to deliver it back".

Assumpsit, &c. in Dougherty Superior Court. Decision by Judge PERKINS, May Term, 1854.

The first question made, is one of practice; and that is, at what time a party is required to respond to a notice to produce papers, material to the cause. The Court below held, that such response was not requisite, prior to the announcement by the party, notifying of his readiness for trial. This is the first error assigned.

The main question arose thus: Alfred H. Worthy gave to the Trustees of Howard College, his promissory note, for $500. Mary Worthy, by parol, assumed to pay this note; the trustees brought an action of assumpsit, &c. against Davis Pace, alleging that Mary Worthy had deposited, or paid money to said Pace, with which to pay this note. Counsel for Pace demurred to this declaration. The Court sustained the demurrer, and this is assigned as error.

WARREN & WARREN, for plaintiffs in error.

LYON & CLARK, for defendant.

*By the Court.*—BENNING, J., delivering the opinion.

A part of the sixth section of the Judiciary Act of 1799, is in these words: "The said Courts shall have power, on the trial of causes cognizable before them, respectively, on ten days' notice, and proof thereof being previously given to the opposite party, or his, her or their attorney, on motion to require either party to produce books and other writings, in his, her or their possession, power or custody, which shall contain evidence pertinent to the cause in question, under circumstances where such party might be compelled to produce the same, by the ordinary rules of proceeding in Equity; and if the plaintiff shall fail or refuse to comply with such order, it shall be lawful for the Court, on motion, to give judgment against such plaintiff, as in cases of non-suit; and if the defendant

shall fail or refuse to comply therewith, the Court, on motion, shall give judgment against such defendant, as in case of judgment by default".

And the question is, at what time may the motion to produce, which is by these words given, consequent upon a notice, be made ?

The Courts, it is clear, have "power" to *hear* this motion, on the *instant* of the expiration of the ten days; for they may, at that instant, "require either party to produce", &c. It would seem to follow, that the motion may be *made*, at least as early as at that instant, for a Court can hardly be said to have power to hear a motion, until after some party has acquired a right to make the motion.

*Ought* the Courts to hear the motion, at a period so early as this ? What is the object to be accomplished ? It is the same object which might be accomplished by a proceeding in Equity —by a bill. What object does a bill accomplish ? It gives the plaintiff in it, the benefit of *inspecting and copying* the writing sought for, at *the time of the filing of the answer;* and afterwards, at the time of the hearing, it gives him the benefit of using the writing itself, as evidence. (*Adams' Equity*, 12, 13, 195.)

In Equity, then, the plaintiff obtains a view of the writing, and the right to a copy of it, *before* the hearing—before even being compelled to join issue. The advantage of this is too obvious to need explanation. The object of the Statute, is to give the same benefit at Law, which is given in Equity. This object cannot be accomplished, unless the motion consequent upon the notice, may be made at a time *before the trial*—at *such* a time before the trial, as will enable the movant to obtain the same benefit from inspecting and copying the document produced, that he would have been able to obtain from inspecting and copying it upon the coming in of the answer, had he chosen to proceed in Equity.

[1.] Now we know of no way more analogous to this mode in Equity—none better (or, indeed, as well) adapted to accomplish the same object at Law, than that of allowing it to be in

The Trustees Howard College vs. Pace.

order for parties to make the motion, at any time after the Court has acquired power to hear the motion—that is, at any time after the expiration of the ten days. And therefore, we think that mode to be authorized by the Statute.

And so thinking, we are obliged to say we consider the Court below to have been wrong, in not requiring the notice to be responded to, before requiring the parties giving the notice, to announce themselves ready for trial.

Did the declaration contain a cause of action? Should the demurrer to it have been sustained? We think it should have been.

What is the law, on this point, is so well stated and proved by a late writer on Contracts—Addison—that I shall be excused for preferring his words to my own.

[2.] He says—" but in all cases where money is sent to one person, to be paid by him to another, to enable the person who is the object of the remittance, to maintain an action against the remittee, to recover the amount transmitted to him, there must be an express promise or assent, on the part of the latter, to pay over the money to the former, or hold it to his use, inasmuch as the mandate is revocable, so long as no such assent, promise or engagement has been given or entered into. (*Williams vs. Everett*, 14 *East*. 596. *Fisher vs. Miller*, 7 *Moore*, 537. *Baron vs. Husband*, 4 *B. & Ad.* 611. *Howell vs. Batt*, 5 *B. & Ad.* 504. 2 *N. & M.* 381, *S. C. Stewart vs. Fry*, 7 *Taunt*. 339. *Wedlake vs. Hurley*, 1 *C. & J.* 83. *Loyd vs. Wilson*, 330, *S. C. Grant vs. Austen*, 3 *Price*, 58. *Yates vs. Bell*, 3 *B. & A.* 643. *Gilbert vs. Ruddeard*, 3 *Dyer*, 272, *a. n.* 32. *Hodgeson vs. Anderson*, 3 *B. & C.* 842. 5 *D. & R.* 744, *S. C. Disborne vs. Denabir*, 1 *Rolle's Abr. p.* 30, 31, *z. pl.* 5. When, however, the assent has been given, and the attornment made, the order to pay the money, if founded on a precedent debt or other good consideration, becomes irrevocable. (*Winter vs. Foweracres*. 2 *Roll. Rep.* 39, 40. *Robertson vs. Fauntleroy*, 8 *Moore*, 10. *Atkin vs. Barwick*, 1 *Str.* 165. *Walker vs. Rostron*, 9 *M. & W.* 411.)

The creditor looks no longer to the security of his original debtor, but relies on the assent of the remittee, which cannot be retracted; and is entitled, as we have seen, to maintain an action against him for the amount received. "Where money is paid by A, into the hands of B, to remain at the disposal of C, the right to that money continues in A, until B *gives* and C *takes* credit for it, or B actually pays it to C; up to this period, B is the agent of A only, and A may countermand the authority to make the payment; in the same manner as a person who sends another to pay money, may stop him before he arrives at the place where it is to be paid, and require him to deliver it back". *Best*, C. J. (*Gibson vs. Minet*, 9 *Moore*, 36. *Turberville vs. Porter*, Dyer 49, *a. n.* (10). *Wheatly vs. Low*, *Cro. Jac.* 668.) And if the amount transmitted be a mere voluntary gift or donation, founded upon no precedent, consideration, debt or duty, the authority may be revoked at any time before the money is actually paid over by the remittee. (*Lyte vs. Perry*, *Dyer* 49, *a. b. P.* 7. *Taylor vs. Lendey*, 9 *East.* 54.) Just as money, when paid by mistake, to an agent, and placed by him to the account of his principal, but not paid over, may be recovered back by the party who has inadvertently transmitted it. (*Buller vs. Harrison*, *Cowper* 565. *Cox vs. Prentice*, 3 *M. & S.* 344. *Peto vs. Blades*, 5 *Taunt.* 657. *Edwards vs. Hodding*, *Id.* 815.) Subject to these qualifications, some of the old cases in *Rolle's Abridgment*, where it has been holden that if 20 *l.* be delivered to B, to pay over to C, C can maintain an action against B, to recover this money; or that when goods are given by A to B, under an agreement that B shall pay 20 *l.* to C, that becomes a debt due to C, may still be considered good law. (*Starkie vs. Mylne*, 1 *R. Abr. p.* 32, *pl.* 13. *Desborne vs. Denabie*, *Id. p.* 30, 31, *Z. pl.* 5, 250, 251.

Now it is not alleged in the declaration, that the defendant, Pace, the depositary of Mary Worthy's money, promised the plaintiffs, the trustees of the college, to pay over the money to them or to hold it for their use; or that he gave to them, and they received from him, credit for the money; or, indeed, that

he made any actual promise, agreement or assent, with respect to the money. And from what is alleged, it does appear that the promise of Mary Worthy, to pay the note of Alfred Worthy, was without consideration.

It follows, most clearly, that the trustees of the college had no right of action against Pace. In so deciding, therefore, the Court below decided correctly.