SMITH *v.* PEACOCK, administrator.

*114 691
Case 2
119 460
119 617*

*114 691
Case 2
j126 293*

*114 691
Case 2
e128 327*

1. Where the owner of money deposited it with another and directed him to deliver the same to a third person as a gift from such owner, he could, at any time before actual delivery to the intended donee and acceptance of the gift by him, recover the money from him with whom it had been so deposited for the purpose stated.

2. Where such an owner placed a sum of money in the hands of another, with instructions to give designated amounts thereof, respectively, to a named son and daughter of the owner, and to invest " a part " of " the balance of this money " in lands and have the titles thereto made to minor children of the person receiving the money : *Held*, that as to any portion of such balance not

actually so invested there was no complete gift to the minors, accepted by their parent for them, and that the owner had the right to recover that uninvested portion.

3. An express trust, in this State, must be created or declared in writing.

4. Applying the rules above announced to that view of the evidence most favorable to the defendant, the court committed no error in directing the verdict which the jury returned in favor of the plaintiff.

5. Inasmuch as the verdict directed by the court was the only outcome of the case legally possible, any error in empaneling the jury was immaterial.

Argued January 10, — Decided February 6, 1902.

Bail-trover.    Before   Judge   Reagan.    Dodge   superior   court. June 8, 1901.

*James Bishop Jr.*, *E. Herrman*, *W. M. Morrison*, and *E. B. Milner*, for plaintiff in error.

*Hall & Wimberly*, *J. E. Wooten*, and *W. M. Clements*, contra.

FISH, J.    Samuel G. Graham brought an action of trover and bail against Ben. W. Smith, to recover $1,926.43, lawful money of the United States, consisting of described treasury notes, national bank notes, gold certificates, silver certificates, gold coins, silver coins, and "pennies."    While the case was pending in court the plaintiff died, and, at the term at which the case was tried, L. M. Peacock, the administrator upon his estate, was made plaintiff in his stead.    The defendant, in his original answer, denied "that plaintiff claims title to or is the owner of any money or property in the possession of defendant," and denied "that plaintiff has any right to recover the money for which this action is brought."    On the trial, upon the close of the evidence, the defendant amended his answer by alleging, that the plaintiff "in his lifetime gave and delivered to defendant the money sued for, with other money, aggregating altogether three thousand dollars or a little more, with instructions to afterwards give and deliver one thousand dollars of said money to Mrs. Elizabeth Mullis, daughter of said S. G. Graham, and seven hundred dollars to Duncan Graham, son of said S. G. Graham, and to keep the remainder of said money and invest the same for the benefit of the children of this defendant, great-grandchildren of said S. G. Graham, and five hundred dollars of the money given defendant for his said children was in fact invested in land for one of defendant's children in pursuance of said gift."    Plaintiff's counsel then made a motion for the direction of a verdict in favor of the plaintiff.    The court sustained this motion,

over the objection of defendant's counsel, "and instructed the jury to render a verdict in favor of the plaintiff for the sum of nineteen hundred and twenty-six dollars and forty-three cents," which verdict was accordingly returned by the jury, and judgment duly entered up thereon. Thereupon the defendant excepted and brought the case here for review.

Most, if not all, of the exceptions to the rulings of the court upon the admission or the rejection of evidence are clearly without merit, and none of them, in the view which we take of the case, need be further considered; for we shall base our decision upon the assumption that the testimony of the defendant himself, in reference to the circumstances under which and the manner in which he obtained possession of the money in controversy, is absolutely true. The theory of the plaintiff was that something over $3,100, belonging to Samuel G. Graham, and which he had kept in a box under his bed, had been stolen and secreted by the defendant, and that the identical money described in the petition was a part of the money so stolen and secreted, which had been subsequently ascertained to be in his possession. The theory of the defendant was that this box with its contents, amounting to something over $3,087, was delivered to him by Samuel G. Graham, accompanied by the instructions in reference to the disposition of the money set up in the defendant's amended plea. According to the defendant's own testimony the money which was found to be in his possession was a portion of the money which he so received from Graham. He explained how he obtained possession of the box of money as follows: "I was pulling fodder there at Mr. Joe Graham's, and they wanted to take the money and bring it and put it in the bank, and he [Samuel G. Graham] said that he had rather lose every cent of it than for them to go there and get it and put it in the bank, and he said that if John and Joe took it and carried it to the bank that it would never do anybody any good but them, and he was not going to give them a cent of it. He said that Duncan could get the place and get along very well, but said that Elizabeth was the only daughter he had, and she was not in as good circumstances as the rest, and he thought he would help her more than any of them. He told me to take this box and carry it to a good secret place, and as soon as I got a chance he wanted me to slip Duncan $700, and he wanted Elizabeth to have $1,000 of it; then he said the balance of

this money he wanted me to put part of it in land and have the deeds drawn to my little motherless children; and he asked me if I would do this myself and I told him that I would. I told him that he knew that John and Joe would be mad with me about it, and he said he would never let them know it; he said that nobody would know about it but himself and it was not necessary for them to know anything about it. He told me that he wanted me to take the money, and, just as soon as I could, to give Duncan and Elizabeth their part, and he said, if I didn't get a chance before, for me to bring Elizabeth her part over there." This testimony was in direct and irreconcilable conflict with the testimony of Samuel G. Graham, taken and preserved in a set of interrogatories and answers which were introduced in evidence by the plaintiff, which was strongly supported by various facts and circumstances developed upon the trial. But, as already intimated, we do not consider it necessary to consider any evidence in the case which conflicts with the defendant's own testimony.

1. So dealing with the case, it appears that old man Graham turned over to the defendant something over three thousand dollars, with instructions to deliver one thousand dollars to the owner's daughter, Mrs. Mullis, and seven hundred dollars to his son, Duncan Graham, and to invest *a part of the balance* in lands for the benefit of the defendant's little children, taking the deeds thereto in the names of such children. The defendant, by his own testimony, showed that he had not delivered any part of the money to Mrs. Mullis or to Duncan Graham. Moreover, neither of them ever made any claim whatever to any part of it, and they both were introduced and testified as witnesses for the plaintiff. Therefore neither of the intended gifts of their father to them had gone into effect. Neither Mrs. Mullis nor Duncan Graham had accepted the intended gift, and there had been neither actual nor constructive delivery of any portion of the money to either of them. "To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof." Civil Code, § 3564. "Actual manual delivery is not essential to the validity of a gift. Any act which indicates a renunciation of dominion by the donor, and the transfer of dominion to the donee, is a constructive delivery." So far as the portions of the money which the defendant

was instructed to deliver to these two intended donees were concerned, the gifts were incomplete for the want of the essential elements of delivery and acceptance, and the money was still in the possession of the defendant, as the agent of Samuel G. Graham, who had the right to revoke the agency which he had created, and terminate the right of the defendant to hold the money for the purpose of distributing it to the intended donees.

In *Trustees of Howard College* v. *Pace*, 15 *Ga.* 486, "The main question arose thus: Alfred H. Worthy gave to the Trustees of Howard College his promissory note for $500. Mary Worthy, by parol, assumed to pay this note; the trustees brought an action of assumpsit, &c., against Davis Pace, alleging that Mary Worthy had deposited or paid money to said Pace, with which to pay this note. Counsel for Pace demurred to the declaration. The court sustained the demurrer, and this [was] assigned as error." This court sustained the judgment of the lower court, Benning, J., saying, in the opinion: "'Where money is paid by A into the hands of B, to remain at the disposal of C, the right to that money continues in A until B *gives* and C *takes* credit for it, or B actually pays it to C; up to this period, B is the agent of A only, and A may countermand the authority to make the payment; in the same manner as a person who sends another to pay money may stop him before he arrives at the place where it is to be paid, and require him to deliver it back.' *Best*, C. J. (*Gibson vs. Minet*, 9 *Moore*, 36. *Turberville vs. Porter*, Dyer 49 *a. n.* (10). *Wheatley vs. Low*, *Cro. Jac.* 668). And if the amount transmitted be a mere voluntary gift or donation, founded upon no precedent consideration, debt, or duty, the authority may be revoked at any time before the money is actually paid over by the remittee. *(Lyte vs. Perry*, Dyer, 49, *a. b.* P. 7. *Taylor vs. Lendey*, 9 *East*, 54.)" In the case here cited from Dyer (which should be Lyte *v.* Peny.) it was held: "If a man bail money to another, to the use of a third, and to be delivered on the day of marriage, he may countermand it any time before delivery over." In the case cited from East it was held: "One who had voluntarily offered to pay a sum of money for the use of the poor of the parish in order to avoid a prosecution by a magistrate upon a charge of having instigated the escape of a prisoner in custody for a misdemeanor; which offer was consented to by the magistrate, and the money accordingly paid by the party to the master

of the work-house for the use of the poor: may, at any rate, counter-mand the application of the money before it is so applied; and may recover it back in an action for money had and received."

In *Burke* v. *Steel*, 40 *Ga.* 217, Steel, who was employed by Burke at a salary of $100 per month, directed Burke to pay $25 per month of his salary to Kay, for the benefit of Kay and his wife and children, as a donation or gift from him to them. Burke retained the $25 per month from Steel's salary, but failed to pay it to Kay, as directed. It was held that Steel might recover the money from him by suit in his own name. McCay, J., said: "This case comes within the case of *Howard College* vs. *Pace*, 15 *Ga. R.*, 486. This was a direction of Steel to Burke to pay Steel's money to a third person. Before Burke does it, or puts himself in such relation to the third person as that he can not draw back, Steel reasserts his own rights. It was a parol gift, without delivery, and revocable at Steel's option."

2. It is contended by counsel for the plaintiff in error, that, whether the gifts to Mrs. Mullis and Duncan Graham were com-plete or not, there was a complete gift as to so much of the money as the defendant was to invest in land for the benefit of his little children. This contention is based upon the theory that this money was given by Samuel G. Graham to the defendant for the latter's children, and that, these children being minors, their father had the right to accept the gift for them and did so accept it. In our opinion, this contention is not tenable. Granting that Graham intended to make a gift of money, and not of land, to these children, and that the defendant, acting for his children, intended to ac-cept the same for them, still the gift was incomplete because of its indefiniteness and uncertainty. According to the defendant's tes-timony, he was instructed by Graham, the owner of the money, to take the entire fund turned over to him and to deliver $1,000 to Mrs. Mullis and $700 to Duncan Graham, and to invest *a part* of the balance in land, taking the deeds in the names of the defend-ant's little motherless children. Can any man say what part of the balance remaining after deducting $1,700 from the entire sum, was to be invested in land for the defendant's children? A gift stands upon the footing of an executed contract, and, as in the case of a contract, there must be an identification of its subject-matter. Here it is impossible to say how much money Graham intended to

give to these children, for clearly he did not intend to give to them all of such balance. If it be said that he intended to give them so much of the balance remaining, after giving $1,000 to Mrs. Mullis and $700 to Duncan Graham, as the defendant should invest in land for his children, then, until the defendant should make such investment, the amount of money which the donor intended to give the children would be unascertained and unascertainable. We are clearly of opinion that there was no complete gift to the children when the defendant obtained possession of the money; and whatever may be the law with reference to the status of the $500 which the defendant did invest in land—taking the deed in the name of one, and not all, of the children,—it seems perfectly plain that as to the money which he had not invested in land the gift intended by Graham was incomplete. Certainly there could be no gift from Graham to these children until an investment had been made in land for their benefit, and then the gift would not include any money not so invested. Taking the defendant's testimony to be true, he was simply the agent of Samuel G. Graham, intrusted as such with a sum of money, amounting to about $3,087, for certain specified purposes, viz.: to deliver $1,000 to Mrs. Mullis and $700 to Duncan Graham, and to invest a portion of the balance in land for his children. Before he had carried out old man Graham's intentions with reference to either of the intended gifts—with the possible exception of the $500 invested in land for one of the children,—the prospective donor reasserted his title thereto and effectually revoked the agency.

3. Neither the counsel for the plaintiff in error nor the counsel for the defendant in error contended before this court that the testimony of the defendant below, if true, showed the creation of an express trust, in which the defendant was the trustee for the beneficiaries thereof. On the contrary, both sides contended that this testimony did not show the creation of an express trust. But as much has been said, in the argument and briefs of counsel, upon the question as to whether this testimony showed the creation of such a trust, we will simply say that no express trust was created, for the sufficient reason, if for no other, that, since the adoption of the code, no express trust can be created by parol in this State. Civil Code, § 3153. We might add, also, that what we have said in reference to the indefiniteness and uncertainty of the subject-

matter of the alleged gift to the defendant's children, rendering the same incomplete, would apply equally as well if the alleged gift were to him in trust for them; the gift to the trustee would be incomplete for the same reason.

4. Applying the rules announced above to that view of the evidence most favorable to the defendant, the court, as we have already seen, committed no error in directing the verdict which the jury returned, the $500 invested in land not being included therein.

5. Complaint is made in the bill of exceptions that the court, in purging the jury, upon motion of plaintiff's counsel, excluded therefrom a certain juror, upon a ground which did not render such juror disqualified to sit upon the trial of the case. We do not deem it necessary to consider this question, for the reason that the verdict directed by the court was the only outcome of the case legally possible, and, therefore, any error in empaneling the jury was immaterial. The verdict being properly directed by the court, it mattered not who composed the jury.

*Judgment affirmed. All the Justices concurring.*