LINSCOTT v. LAMART ET AL.

1. **Homestead:** EXECUTION: JUDICIAL SALE. The sale under execution of a part of a homestead, in connection with other land from which it is not divided, renders the sale void, even though the owner has failed to have the homestead platted and the plat recorded.

2. **Mortgage:** MERGER. Where the mortgagee acquires the legal title by conveyance, without an intent upon his part to extinguish the mortgage, the lien of the latter is not merged in the conveyance.

4. ——: PURCHASE OF HOMESTEAD: JUNIOR LIENS. Where one holding a mortgage upon the property of another, including his homestead, subsequently purchases the homestead, he has the right, notwithstanding the purchase, to insist that the balance of the property shall be applied to the discharge of his mortgage, to the exclusion of junior liens.

*Appeal from Washington District Court.*

·FRIDAY, JUNE 15.

THE averments of the petition which are necessary to an understanding of the case are, in substance, as follows: On the 22d day of April, 1873, plaintiff recovered a judgment against Samuel Ash and Joseph Ash, Jr., for $226. The defendant, Joseph Ash, Sr., became surety on a bond for stay of execution on said judgment. Joseph Ash, Sr., was at the time the owner of a farm of some seventy-one acres. At the expiration of the stay of execution, a general execution was issued and one-half of said land was levied upon and sold to plaintiff at sheriff's sale, and a sheriff's deed made therefor.

On December 29, 1869, the defendant Ash and his wife made a mortgage upon all of said land to the defendant Lamart to secure the payment of $400, and interest at ten per cent. The mortgage was duly recorded.

On February 24, 1874, Ash and his wife conveyed all of the land to Lamart by a deed of general warranty. It is charged that the consideration for said conveyance was the amount due on said mortgage, and that by reason of said conveyance the mortgage has been satisfied, and that the title of Lamart is inferior to that held by plaintiff under his sheriff's deed.

The prayer is for a decree quieting plaintiff's title and for general relief.

It is alleged in the answer of Lamart that his co-defendant, Ash, became the owner in fee simple of all of said land in the year 1862; that he was then and ever since has been the head of a family; that shortly after he purchased said land he entered into the actual possession thereof as a homestead, and continued to reside thereon with his family until the spring of the year 1874; that the sheriff's sale was made to plaintiff without setting off the homestead, and that part of the homestead was actually sold and is included in the land claimed by plaintiff. By way of cross-petition it is denied that on the 23d day of February, 1874, he (Lamart) purchased of Ash all of said land and received from him and his wife a deed therefor; that at the time Ash was indebted to him in the full sum of $400 and all the interest thereon from 1869 on the mortgage set out in the petition; that Ash was also indebted to him by promissory notes in a large amount, and that there was a large amount of taxes due on said land; that the total indebtedness of Ash to him was about $1,400; that it was agreed as a consideration for said conveyance that he (Lamart) should pay the taxes upon said land and surrender to Ash all notes and evidences of debt, save the mortgage; that for its payment Lamart should rely solely on the land; that upon the execution of the deed Lamart took possession of the premises and has ever since that time remained in possession; that on the 27th day of October, 1873, plaintiff recovered a judgment against the defendant Ash for $291, and a decree of foreclosure of a mortgage made by Ash to plaintiff, dated January 10, 1873; that special execution was issued on said judgment and decree, and on the 8th day of December, 1873, all of said land was sold by the sheriff to plaintiff for the amount due on said judgment, and a certificate of purchase issued to plaintiff; that in November, 1874, he (Lamart) redeemed said land from said sale by paying the plaintiff the necessary amount for that purpose. It is claimed that by said redemption Lamart is entitled to a sheriff's deed for said land, which would confer upon him a perfect title.

The answer to the cross-petition admits that plaintiff did have a prior mortgage; that it was foreclosed and a sale made to plaintiff. It is denied that Lamart redeemed from said sale, and alleged that he merely paid off and satisfied the judgment. Upon these issues there was a trial upon written evidence, the proper order having been made. There was a decree finding the equities with defendant. The petition of plaintiff was dismissed, and defendant's title as set up in his cross-petition was held to be valid. Plaintiff appeals.

*A. R. Dewey*, for appellant.

*A. H. Patterson & Son*, for appellee.

ROTHROCK, J.—I. It appears from the evidence that Ash, with his family, occupied the premises as a homestead from about 1867 to 1874. He was thus in possession when he and his wife executed the mortgage to Lamart in 1869. He did not at any time make selection of any particular part of the land as a homestead and cause it to be recorded as provided by law. Both these parties, however, seem to concede that the homestead was the north part of the tract inasmuch, we suppose, as the dwelling house is situated on that part. The plaintiff caused the south half to be levied upon and sold in satisfaction of his judgment. The whole tract is described as containing 71 and 8-100 acres. The sale of the south half of the tract left less than forty acres as a homestead.

The failure of the owner to select, plat, mark out and record does not leave the homestead liable. Code, Sec. 1998. Ash and his wife had the right to sell and convey the homestead to Lamart, and he has the right to hold it exempt from judicial sale on plaintiff's judgment.

Without determining the location of the homestead, we think as the plaintiff sold more land than was liable to be sold in satisfaction of his judgment, the sale was void.

II. The mortgage from Ash and wife to Lamart covered the whole 71 acres. It is insisted by counsel for appellant that the conveyance afterward made by

*Marginal notes: 1. HOMESTEAD: execution: judicial sale. 2. MORTGAGE: merger.*

Ash and wife to Lamart extinguished the mortgage lien upon the whole of the land and left it liable to be sold in payment of the judgment.

In the case of *Wickersham v. Reeves & Miller*, 1 Iowa, 413, it was claimed that the mortgage had been extinguished by the conveyance of the legal title, and ISBELL, J., in delivering the opinion of the court, says: " We think this view is not sustainable. The evidence clearly shows that this was not the intent of the parties to the sale of the legal title to petitioner, nor was it for the interest of the petitioner. We, therefore, conclude that this mortgage continued to exist as a lien on the premises." The same rule was followed in *Wilhelmi v. Leonard*, 13 Iowa, 330.

The evidence in the case at bar shows that when Lamart took his conveyance, he did not surrender or cancel the mortgage, but held it, because, as he says: "there was too much incumbrance against the land." It is true that sometime after the conveyance to him he surrendered the notes secured by the mortgage, but all the evidence shows that on account of other liens upon the land he intended to and did hold the mortgage to protect him against their enforcement. We are of opinion that the mortgage was *not* merged and extinguished by the conveyance of the legal title.

III. What then are the rights of the parties? If Ash had not conveyed to Lamart, upon foreclosure of the mortgage, the homestead could only " be sold to supply the deficiency remaining after exhausting the other property " included in the mortgage. Lamart paid Ash some $1400 for the whole tract, being more than twice the amount of the mortgage. No fraud is charged or shown, and as he had the right to purchase the homestead and hold it as against plaintiff's judgment, he should now have the right to have the proceeds of the land, aside from the homestead, applied in payment of his mortgage, to the exclusion of junior liens. In other words, it would be inequitable to put him in a worse position than he would be if he had not taken the title from Ash. The plaintiff, by this rule, is left in precisely the same position he would now occupy if

3. ——: purchaser of homestead: junior liens.

Ash were still holding his homestead, and Lamart his mortgage.

IV. The evidence does not show that Lamart redeemed from plaintiff's foreclosure sale as a lien-holder or creditor of Ash. He paid his money in satisfaction of the judgment and must be regarded as redeeming as owner of the land. This sum, however, is a material addition to the amount agreed to be paid by Lamart for the land.

· V. The decree of the District Court dismissing plaintiff's petition will be affirmed because of the unauthorized sale of part of the homestead. The decree quieting title in defendant will be so far modified as to permit plaintiff to take out execution, ascertain the land not embraced in the homestead and levy and sell it subject to the defendant's mortgage.

AFFIRMED.