## GRAY v. NELSON *et al.*

1. **Mortgage:** PURCHASE OF LEGAL TITLE BY MORTGAGEE: MERGER. A father held a first mortgage on his son's land. Afterwards he purchased the land for a given sum, paying in cash the difference between that sum and the amount of the mortgage. The father did not at this time know of any junior liens on the land, but he did not give up the note and mortgage, and the latter was not cancelled of record. *Held* that there was no merger of the mortgage in the legal title, but that it remained the first lien in his hands and those of his assignee. (See cases cited in opinion.)

2. ———: ———: ACCOUNTING TO JUNIOR LIEN-HOLDERS FOR RENTS AND PROFITS. Where a mortgagee buys the legal title to the mortgaged land, although his mortgage is not merged therein in favor of junior lien-holders, he is not required, in the adjustment of liens, to account to them for the rents and profits of the land for the time he has enjoyed it under his deed.

3. **Gift:** EXECUTED: WHAT IS NOT: INDORSEMENT ON NOTE. A father held his son's note and a mortgage on his land as security. At one time he made an indorsement on the note as of a sum paid thereon, but there was no payment, and the intention of the father was to make him a gift of the amount. The indorsement and the father's intention were not made known to the son, but afterwards the father bought the mortgaged land of the son, applying the full amount of the note in part payment. He still retained the note and mortgage as a lien against the land, and afterwards assigned them to plaintiff, having first erased the indorsement. *Held*, as against junior lien-holders, in an action to foreclose the mortgage, that there was no executed gift to the son, and that plaintiff was entitled to judgment for the full amount of the note.

*Appeal from Audubon District Court.*—HON. H. E.
DEEMER, Judge.

FILED, JANUARY 30, 1889.

ACTION in equity to foreclose a mortgage upon cer-
tain real estate. The defendants Deere, Wells & Co.
are creditors of the defendant L. H. Nelson, the mort-
gagor, and the cause involves the rights of the plaintiff
and Deere, Wells & Co. to subject the land to the pay-
ment of their claims against the mortgagor. There was
a full trial upon the merits, and a decree was entered
which was not satisfactory to either party, and both
appeal.

*H. W. Hanna, John M. Griggs,* and *Chas. S. Fogg,*
for plaintiff.

*Smith & Hare,* for defendants.

ROTHROCK, J.—I. The defendant L. H. Nelson was
the owner of the premises in controversy, and in January,

1. MORTGAGE:
purchase of
legal title by
mortgagee:
merger.

1880, he executed the mortgage in suit
to his father, James Nelson, and on the
nineteenth day of October, 1883, he exe-
cuted a warranty deed to his father for the
land. This deed was not delivered to James Nelson
until the twenty-fourth day of November, 1883. On the
nineteenth day of the same month Deere, Wells & Co.,
who were creditors of L. H. Nelson, commenced an
action against him upon their claim, and levied an
attachment upon the land. Judgment was subsequently
rendered upon the claim, and Deere, Wells & Co. after-
wards commenced an action to set aside the deed from
L. H. Nelson to James Nelson as fraudulent and void,
and also claiming that in any event their attachment
was paramount to the deed. It was determined in that
action that the attachment was good as against the deed,
but the question as to the right of James Nelson to
interpose his mortgage as a paramount lien was left
undetermined. That case is reported in 73 Iowa, 186

After the decree was entered in the district court in that case, James Nelson assigned his mortgage, and note given in connection therewith, to George Gray, the plaintiff herein.

The above are the facts in the case as they appear on the face of the record. There are some minor questions presented in the pleadings, and argued by counsel, which we will first determine without much elaboration. It is claimed by defendants that the assignment of the note and mortgage from Nelson to Gray was fraudulent and without consideration, and that the plaintiff is not the real party in interest. This claim has no foundation in the evidence. The assignment was valid, and it transferred to the plaintiff all the rights which Nelson had under the note and mortgage. It was alleged by Deere, Wells & Co. that there had been divers payments made and credits given to L. H. Nelson on the indebtedness, which were not shown in the plaintiff's petition. This claim is also without foundation. It affirmatively appears that L. H. Nelson never made any payment upon the debt. It appears that one Stewart commenced an action against L. H. Nelson, and attached the land before the deed was delivered, and obtained judgment, and bought the land at sheriff's sale on special execution, and assigned the sheriff's certificate of sale to Deere, Wells & Co. It is claimed by Deere, Wells & Co. that this is a valid lien upon the premises. But it appears by competent evidence that a redemption was had upon the sale. The cause was presented to the court below in a very elaborate manner. There is much more in the record than was necessary to determine the equities of the contending parties. There are other minor questions presented which we do not think proper to mention. The real questions in the case are but few, and we will now proceed to consider them.

The district court held that the mortgage in suit was not merged in the deed made by L. H. Nelson to James Nelson. This is the main question in the case, and the defendants contend that the decree in this respect is a

grievous error.   It has long been settled in this state
that, where a mortgagee takes a conveyance of the
mortgaged property from the mortgagor, the mortgage
is not merged in the deed, where it is the intention of
the mortgagee and to his interest to still hold the mort-
gage as a lien.   *Wickersham v. Reeves*, 1 Iowa, 413 ;
*Vannice v. Bergin*, 16 Iowa, 555 ; *Linscott v. Lamart*,
46 Iowa, 315 ;   *Woodward v. Davis*, 53 Iowa, 697, and
other cases.   In some of the cases it was held that there
was no merger, even where the mortgage was satisfied
of record   The same rule as to merger has been adopted
by all courts in all civilized countries.   The counsel in
this case have made this plain by citing a very large
number of authorities.   We may say that when a prin-
ciple is so well settled that it is "laid up among the
fundamentals," a mere reference to the principle is suffi-
cient.   But counsel for the defendants contend that
while it is to be presumed that James Nelson intended,
when he took the conveyance of the land, to hold the
mortgage lien, if it should be to his interest to do so to
protect himself against conflicting liens, yet that pre-
sumption is overcome by the testimony of James Nelson
in the case between the parties above cited.   It is true
that in that case he claimed that he intended to take
the whole title to the land, and he claimed it under the
deed.   This is the intention of every mortgagee who
takes title in satisfaction of the mortgage.   He intends,
as between himself and the mortgagor, to hold the land
under the conveyance.   The rule as to non-merger has
no application, except as to conflicting liens.

It is necessary to state some of the circumstances
surrounding the parties, as bearing upon the equities
arising in the case.   James Nelson was all his life a res-
ident of Vermont.   He died some time after he assigned
the note and mortgage in suit to the plaintiff.   His son,
L. H. Nelson, came from Vermont to this state some
years before the events occurred which gave rise to this
litigation.   The land in controversy was bought of one
Stewart.   James Nelson paid for the land, and had it

Gray v. Nelson.

conveyed to his son, who executed the mortgage to secure part or all of the purchase money. Some time before the deed was made the son was in Vermont on a visit, and some preliminary negotiations were had, which may be said to have resulted in an offer by James Nelson to give eighty-five hundred dollars for the land. The deed was sent by the son to his father in pursuance of this offer. Immediately upon receiving the deed James Nelson sent to L. H. Nelson about thirty-two hundred dollars in cash. This payment, added to the amount of the mortgage, made up the eighty-five hundred dollars purchase money. It is not claimed that this was not the full value of the land. At the time the payment was made James Nelson had no knowledge that any one claimed to have a lien on the land by attachment or otherwise. The note and mortgage were not surrendered to the mortgagor, and the mortgage yet remains uncancelled of record. The evidence shows beyond question that James Nelson acted in the utmost good faith. He had no intention to surrender his mortgage for the benefit of other creditors of L. H. Nelson. The doctrine of non-merger has grown up in equity to protect just such claims as that of James Nelson under this mortgage. It surely would be most inequitable to hold that because of the deed James Nelson extinguished his lien of more than four thousand dollars in favor of the creditors of his son.

II. After the deed was made, L. H. Nelson surrendered the possession of the land to James Nelson, and it was occupied and cultivated by his tenants and agents In fixing the amount of the plaintiff's lien the court deducted from the amount of the mortgage the rental value of the land. The ground of this ruling was that a mortgagee in possession should, as between him and a junior lien-holder, account for the rents and profits of the mortgaged property. It is true that a senior mortgagee, who takes possession of the mortgaged premises under a sale in foreclosure, will, on redemption by a junior

lien-holder who was not a party to the foreclosure proceedings, be required to account for the rents and profits during the time the possession was thus held. *Ten Eyck v. Casad*, 15 Iowa, 524; *Bunce v. West*, 62 Iowa, 80, and cases there cited. But that rule has no application in this case. If James Nelson had foreclosed his mortgage, or if he had taken possession under his mortgage without more, the claim of defendants that rents should be deducted from the mortgage would be within the rule of the cited cases. But he held the possession of the land as a purchaser. He actually paid to the mortgagor the sum of thirty-two hundred dollars for his equity of redemption, — an amount largely in excess of the rents and profits. If the mortgagor had held the possession, he would not have become liable for rents and profits, and whatever effect the deed had as a conveyance of title, as against a junior lien-holder, it had the effect to operate as an assignment of the equity of redemption. Before a mortgagee in possession can be required to account for rents and profits, he must be reimbursed for all costs and expenses and money fairly and in good faith paid to obtain possession of the subject of the mortgage. We think the court erred in holding that the mortgagee, or the plaintiff who is his assignee, should account for rents and profits.

III. It appears in evidence that at one time James Nelson made an indorsement on the note secured by the mortgage, which indorsement was in these words: "Received, April 1, 1882, six hundred and ninety four dollars, on the within note." No such payment was made. At the time of the endorsement James Nelson intended to make a gift of the amount indorsed to his son. He afterwards changed his mind, and, when the deed was delivered and the amount of the mortgage taken into account as purchase money, the sum indorsed on the note was not deducted therefrom. When the note was assigned to plaintiff the indorsement was erased. L. H. Nelson did not at any time know that the indorsement

3. GIFT: executed: what is not: indorsement on note.

had been made. The court deducted the amount named in the indorsement from the mortgage, upon the ground that it was an executed gift. We think this part of the decree was erroneous. The evidence conclusively shows that there was no acceptance of the gift. Besides, if it ever had any validity as a gift, it was recalled and cancelled by the parties thereto when James Nelson bought the land without any knowledge of any lien thereon other than his own, and in effect collected the full amount of the mortgage from his son.

The cause will be remanded to the court below, with direction to enter a decree of foreclosure for the full amount of the note and mortgage, without any deductions. The result here is that the decree is affirmed on defendant's appeal, and upon plaintiff's appeal it is REVERSED.