MATTHEW E. CARDOZA & another *vs.* FRANK LEVERONI, administrator.

Suffolk.    January 15, 1919. — June 25, 1919.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & CARROLL, JJ.

*Gift. Mortgage,* Of real estate: discharge.   *Trust,* What constitutes.

A gratuitous promise to discharge a debt evidenced by a note secured by a mortgage of real estate, not accompanied by the redelivery of the note or mortgage or by the execution or delivery of any instrument to carry out the promise, does not extinguish the debt nor, after the death of the mortgagee, give to the mortgagor

a right to maintain a suit in equity to enjoin the foreclosure of the mortgage by the administrator of his estate.

Although no particular form of words is necessary to create by declaration a trust in a note secured by a mortgage of real estate, a mere executory purpose to do so is not enough.

An imperfect gift cannot be interpreted to be a declaration of trust.

Where the owner of a note secured by a mortgage of the maker's real estate, while the note and mortgage were in the possession of an agent of the owner together with a signed but unacknowledged and unrecorded assignment of them by the mortgagee to the agent, made statements to the mortgagor which plainly showed that he considered that the mortgagor had paid enough on the debt, that he considered the mortgage paid and that he intended to make a transfer of the title in the future by discharging it, but died without having done so, such facts are not sufficient to show a complete declaration of a trust of the note for the benefit of the mortgagor.

BILL IN EQUITY, filed in the Superior Court on August 9, 1917, alleging that the defendant, as administrator of the estate of one Mary De Castro, was in possession of a mortgage upon certain real estate owned by the plaintiffs, which he intended to foreclose, contending that there was a balance due thereon; that the defendant's intestate previous to her death had made a gift to the plaintiffs of the balance due on the mortgage. The prayers of the bill were that the defendant be restrained from foreclosing the mortgage and be ordered to execute and deliver a discharge of it.

The suit was referred to a master. Material findings of the master are described in the opinion. The suit was heard upon the pleadings and the master's report by *Jenney,* J., who ordered the report confirmed and the bill dismissed with costs. The plaintiffs appealed.

*W. H. Lewis,* ( *I. H. Fox* with him,) for the plaintiffs.

*S. L. Bailen,* (*F. Leveroni* with him,) for the defendant.

CARROLL, J. The defendant's intestate, Mary De Castro, was the owner of a mortgage on the real estate of the complainant, Matthew E. Cardoza. The bill alleges that she made a gift to the plaintiff "of the balance then remaining unpaid on the said mortgage." The plaintiffs seek to restrain the defendant from foreclosing this mortgage, which matured three years after its date, and while held by Miss De Castro was twice renewed. The mortgagor paid the interest to Mary Cass, an agent of the mortgagee, and made the last interest payment on October 14, 1914. On this date Cardoza delivered to Miss De Castro a policy of insurance in the sum of $3,000, payable to the mortgagee as her

interest may appear. On the following day Miss De Castro signed and delivered to Miss Cass an assignment of the mortgage, which never was acknowledged or recorded, and an order on the Cardozas to pay her the interest and principal of the mortgage when due. The order and assignment were executed solely for the purpose of authorizing Miss Cass to collect the interest or principal which Miss De Castro might demand of the mortgagor.

The master found that when these instruments were signed Miss De·Castro was "undecided as to whether or not she would ask the Cardozas to pay anything further toward the balance then remaining due on the mortgage, but felt that they should pay at least $500 in order to entitle them to a release from all further obligation thereunder, and so expressed herself to Miss Cass;" that in November of the same year, when Miss Cass asked Miss De Castro what, if anything, she was to do with the Cardoza mortgage, Miss De Castro "replied by the single word, 'Wait';" that after the papers were signed, Miss De Castro began to regret her action and to distrust Miss Cass; that she became hostile to her and this hostility lasted until ·the death of Miss De Castro, although "Miss Cass at no time did anything to justify the attitude which Miss De Castro adopted toward her."

As soon as Miss De Castro began to distrust Miss Cass she decided to make a gift of the mortgage to the Cardozas. On or about October 21, 1914, she told them "that she was not going to renew the mortgage which was then overdue because they had paid enough; she also informed them that at her last interview with Mary Cass she had told her that it was no more than right to leave the mortgage to the Cardozas." In March, 1915, Cardoza told Miss De Castro that interest would be due the following April, to which she replied, "I told you the last time I was here that I was going to discharge the mortgage to you because I considered that mortgage paid by you, that you had paid enough, and don't you go down to Mary Cass to pay any money at all." Subsequently, on one or two occasions, she said she considered the mortgage paid and intended to give it to the Cardozas. A few days before she died, in February, 1917, she requested Cardoza to call and see her on a matter of business and expressed much displeasure at his failure to respond. No interest was paid or demanded after October 14, 1914. The master found that Miss

De Castro considered the mortgage paid and intended to deliver the note and mortgage to the plaintiffs; but that no delivery or assignment of the mortgage was made, the mortgage remained undischarged of record, the note and mortgage were in the possession of Miss Cass until the death of Miss De Castro, and no request was made to deliver them.

From the master's findings it is clear that Miss De Castro intended to absolve the Cardozas from further payment and to make a gift to them of the note and mortgage; but this intent was never carried out. The gift was not perfected. The note remained in the possession of her agent and there was no delivery of the instruments: her purpose was never executed. There was no consideration to support the parol promise to make the gift; and words alone, without a delivery, are insufficient to complete it. The contemplated gift to the Cardozas rested in the intention of Miss De Castro to transfer the title in the future. "An intent to give is not a gift; nor is an executory agreement or promise without consideration a gift." *Gerry* v. *Howe,* 130 Mass. 350. *Grover* v. *Grover,* 24 Pick. 261. *Buswell* v. *Fuller,* 156 Mass. 309. *Duryea* v. *Harvey,* 183 Mass. 429. A gratuitous promise to discharge a debt does not extinguish it. Although the intestate intended to discharge the debt, her intention never became effective. See *Weber* v. *Couch,* 134 Mass. 26; *Smith* v. *Johnson,* 224 Mass. 50.

Nor were the acts and statements of Miss De Castro sufficient to create a trust, by constituting herself a trustee of her own property for the benefit of the Cardozas. While the language and acts indicated an intention to bestow a gift on the Cardozas, there is nothing in the evidence or findings of the master to show that she clearly manifested a desire to hold the note and mortgage in trust for them. Even if such a plan were contemplated, it was never executed or fully declared. Although no particular form of words is necessary to create a trust, a mere executory purpose is not enough. There must be a complete intention, shown and expressed with sufficient clearness. See *Supple* v. *Suffolk Savings Bank,* 198 Mass. 393. The statements of Miss De Castro indicate either that she considered the mortgage paid, or that she contemplated a transfer of the title in the future by discharging the mortgage or by making a gift to the Cardozas. Her declara-

tions that Cardoza had paid enough and that she considered the mortgage paid are insufficient to establish a trust; and if she contemplated the making of a gift in the future, a trust does not arise from this circumstance; for an imperfect gift cannot be converted into a declaration of trust. In the case of a voluntary disposition of property the settlor must complete the transfer in order to make it binding upon him; and if it is intended that the settlement is to be perfected as a gift, the court will not make it operative as a trust. "If it is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being converted into a perfect trust." *Milroy* v. *Lord,* 4 DeG., F. & J. 264, 274. *Welch* v. *Henshaw,* 170 Mass. 409.

We find nothing in the Massachusetts cases cited by the plaintiffs contrary to what is here decided. If anything is to be found in the decided cases of other jurisdictions, in conflict with the well settled law of this Commonwealth which governs the case at bar, we must decline to follow them.

It follows that, as there was no perfected gift, nor a sufficient declaration of trust, the plaintiffs cannot prevail.

*Decree affirmed.*