## HELMER *v.* HELMER, executor.

1. "To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof."
2. "If the donation be of substantial benefit, the law presumes the acceptance, unless the contrary be shown."
3. Where a father sold to a son a certain tract of land and took his note for the sum of $25,000 as the purchase-price of the land, and later, while the note was in the possession of the attorney for the father, the latter asked to see the note in question, and the attorney took it out of his safe, and the father dictated to him the following,

which the attorney wrote on the back of the note: "Atlanta, Ga., October 25, 1921. Received on within note $5000, and said note is hereby extended for one year from April 12, 1922, making the maturity of said note April 12, 1923. The interest on said note shall remain $100.00 per month until maturity of same;" and where the father signed the endorsement and gave the note back to the attorney, who returned it to his safe, where it remained until the father's death, which occurred more than a year later; and where the note was not due at the time of the endorsement, and no money was paid by the son or any one for him on the note, and the son did not know of the endorsement until after the father's death; and where on the trial of a case which was submitted to the trial judge to pass upon questions both of law and of fact, in a proceeding had for the purpose of an accounting between the executor of the last will and testament of the deceased father and certain distributees of the estate, wherein it was contended that the endorsement on the note was a gift from the father to the son, it did not appear that the decedent had ever parted with the note or the endorsement, or that the son had accepted the gift, it was error for the court to hold that such an endorsement amounted to a gift from the father to the son of $5000.

4. A contract is an agreement between two or more parties for the doing or not doing of some specified thing. To constitute a valid contract there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter upon which it can operate.

5. Consequently where, in the circumstances as stated in headnote 2 above, it further appeared that before his death the father stated to his wife, the mother of the son, that he made the endorsement on the note for the reason that he thought he had charged the son too much for the land, and for the further reason that the son had contributed to the support of the son's adult married sister and her children; and where it further appeared that there were no valuable considerations moving directly from the son to the father, and that the son did not enter into any contract or agreement with the father in relation to the credit on the note, or the giving of money to the sister, such facts will not constitute a contract between the father and the son, the effect of which is to place a credit of $5000 on the note of the son.

No. 4351. DECEMBER 15, 1924.

Equitable petition. Before Judge Bell. Fulton superior court. April 5, 1924.

*L. C. Hopkins* and *Troutman & Troutman,* for plaintiff in error.
*Willis M. Everett,* contra.

HILL, J.   J. Harry Helmer Jr., as executor of the last will and testament of James H. Helmer, brought an equitable petition against C. E. Helmer and others for a settlement of his account with the estate of testator. The case was submitted to his honor Judge Bell for decision on questions both of law and of fact. The facts in the case are not disputed. The main question in the case

is what was the legal effect of a certain endorsement which had been made by James H. Helmer, deceased, more than a year prior to his death on a certain note which he held against his son, Harry Helmer, the defendant in error. The note was given by Harry Helmer to his father, James H. Helmer, deceased, for $25,000, and in October, 1921, was in the possession of Willis M. Everett, who was then the attorney at law for decedent. During the month of October, 1921, the decedent came to the law office of Mr. Everett and asked to see the note in question. The record shows that Mr. Everett took the note out of his safe, and the decedent dictated to him the following which Mr. Everett wrote on the back of the note:. "Atlanta, Ga., October 25, 1921. Received on within note $5000, and said note is hereby extended for one year from April 12, 1922, making the maturity of said note April 12, 1923. The interest on said note shall remain $100.00 per month until the maturity of same." After the endorsement was written the decedent signed the endorsement, and handed the note back to Mr. Everett, who placed it in his safe. The note remained there until after decedent's death, which occurred more than a year later. At the time of the endorsement on the note it was not due. No money was paid by the son, or by any one for him. Harry Helmer did not know of the endorsement on the note until after his father's death. Mr. Everett was not the attorney for the son, nor his agent. It was contended by the defendant in error, Harry Helmer, that the foregoing facts constituted a valid gift to him by his father in October, 1921, of the $5000 mentioned in the endorsement, and that he should not be required to account for this $5000, but should be discharged of all liability on the note when he paid $20,000 with interest. On the other hand, C. E. Helmer, plaintiff in error, one of the distributees of decedent's estate, contended that the facts above set out did not constitute a valid gift, and that Harry Helmer should be required to account for the entire $25,000. The evidence tended to show that the note had been given by Harry Helmer to his father as a part of the purchase-price of certain real estate with which he had had "bad luck;" also that Harry Helmer had made substantial contributions to the support of his sister and her children. The mother of Harry Helmer, the wife of the decedent, testified that decedent had told her that he thought Harry had paid too much for the land and that he, decedent, should

make some amends, and that this was the reason why he had made the endorsement on the note given him by his son. There is no evidence tending to show that Mrs. Helmer ever told the defendant in error about the endorsement on the note; in fact the defendant in error himself testified that he knew nothing about it until after his father's death. Judge Bell, who heard the case both as to the law and facts, decided in favor of the defendant in error, holding in effect that the facts above stated constituted a valid gift, and that Harry Helmer should not be required to account for the $5000 endorsed on the note. The plaintiff in error excepted to the above order of the court.

1. Counsel for plaintiff in error in his original brief argues the case on the sole question whether the evidence was sufficient to establish a valid gift *inter vivos* from the deceased to his son Harry Helmer, and insists that no question of a gift *causa mortis* (Civil Code of 1910, § 4154) was involved, and that the endorsement on the note was a gift *inter vivos* or nothing. "To constitute a valid gift there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by the law in lieu thereof." Civil Code (1910), § 4144. From the above provisions of the statute, in order to constitute a valid gift it is essential that certain elements be present: 1. Intention to give by the donor. 2. Acceptance by the donee. 3. Delivery of the article given. Section 4145 provides: "If the donation be of substantial benefit, the law presumes the acceptance unless the contrary be shown. A parent, guardian, or friend may accept for an infant. The officers of a corporation accept for it." Therefore, if the donation be of a substantial benefit, the law presumes an acceptance, unless the contrary be shown.

In *Burt* v. *Andrews,* 112 *Ga.* 465, 467 (37 S. E. 726), it was held: "To constitute a valid gift of a chattel, there must be not only an intention to give by the donor, but a delivery of the article given, or some act done which will be accepted as delivery." And see *Anderson* v. *Baker,* 1 *Ga.* 595; *Evans* v. *Lipscomb,* 31 *Ga.* 71; *Mims* v. *Ross,* 42 *Ga.* 121, 123; *Harrell* v. *Nicholson,* 119 *Ga.* 458 (46 S. E. 623); *Knight* v. *Jackson,* 156 *Ga.* 165 (118 S. E. 661): *Cowdrey* v. *Barksdale,* 16 *Ga. App.* 387 (85 S. E. 617); *Lanier* v. *Holt,* 18 *Ga. App.* 185 (89 S. E. 182). In order to make out a complete gift there must be proof not only of present intention to

give, but a complete renunciation without power of revocation, and a full delivery of possession of the thing given. *Burt* v. *Andrews, supra.* In that case the language of the donor was clear. She said to the donee in the presence of another witness, "There is the china set and the washstand set, and you may have them." Another witness testified that the language used by the deceased to the plaintiff was, "There is my china set and washstand set, which you may have for your kindness in waiting on me." It appeared in that case that the parties were sisters; that the donor had been ill for several months, and the donee had nursed her and cared for her wants for a considerable length of time; that during her sickness and before her death her sister told the witness that for her kindness in staying with her and waiting on her she might have the articles sued for. Yet this court decided that there had been no delivery and no relinquishment of dominion by the donor, and consequently under the strict rules of law that there had been no gift. It is stated in the opinion in the *Burt* case that "it is not contested that the articles, after this statement of the deceased, remained just where they were at the time the words were spoken." In the instant case, after the decedent had written the endorsement, the note remained in the safe of his attorney, exactly where it had been previously. In the *Burt* case the donee knew of the gift, the declaration of it having been made directly to her, and she presumably accepted it. In the instant case the donee knew nothing about the gift until after the donor had died. So the presumption that the donee had accepted the gift is rebutted by the evidence of the donee himself, who testified that he did not know of it until after the death of his father. In line with the *Burt* case, the Court of Appeals in *Lanier* v. *Holt, supra,* held: "Proof of a gift requires evidence of three essentials: 1. Intention. 2. Acceptance. 3. Delivery." And see to the same effect *Cowdrey* v. *Barksdale, supra.*

*Knight* v. *Jackson, supra,* was a case where Knight was the attorney for Miss Mary Knight, deceased. He held a judgment in favor of Miss Knight, who told him to pay over all moneys that he might collect on it to her nephew, or to his guardian. After the collection of the judgment Miss Knight directed the attorney to hold the money for her nephew and deliver it to him or to his guardian as soon as one should qualify, stating that she had already given

the amount to him by reason of her love and affection for him. Several months later, while the attorney still held the money, Miss Knight died. This court held in that case that there was no gift, because there had been no delivery. This court, speaking through Mr. Justice Hines, said: "The direction by the client to the attorney, after the money had been collected, to hold it for the nephew and deliver it to him or his guardian as soon as one qualified, coupled with the statement that she had already given the same to the nephew, did not constitute a complete and binding gift. The direction did not contemplate the immediate delivery of the funds to the donee. It clearly contemplated delivery when he became of age, or delivery to his guardian when one was appointed. Until such delivery, the attorney held these funds for his client, and she could at any time revoke the direction given. There was no renunciation of dominion over the funds by the donor, nor transfer of dominion to the donee, and there was no change of possession of the subject-matter of the gift. . . This being the case, the death of the donor, with these funds still in the attorney's hands, was a revocation of his authority to deliver the funds to the minor or to his guardian. 'Where the owner of money deposited it with another and directed him to deliver the same to a third person as a gift from such owner, he could, at any time before actual delivery to the intended donee and acceptance of the gift by him, recover the money from him with whom it had been so deposited for the purpose stated.' *Smith* v. *Peacock,* 114 *Ga.* 691 (40 S. E. 757, 88 Am. St. R. 53) ; *Howard College* v. *Pace,* 15 *Ga.* 486 ; *Burke* v. *Steel,* 40 *Ga.* 217." In the *Knight* case, an effort was made to support the gift on the ground that Miss Knight had constituted her attorney a trustee for the minor; but this court held that since the adoption of our code an express trust can not be created by parol. In this State all express trusts must be created or declared in writing. Civil Code of 1910, § 3733. There is nothing in the record here to indicate any intention to constitute Mr. Everett a trustee for Harry Helmer; and even if he had declared such an intention, it would have been void unless expressed in writing. There is nothing in the written endorsement itself which seeks to constitute a trust in favor of Harry Helmer.

In *Mims* v. *Ross,* supra, it was said by Judge McCay : "To make out a gift it would require proof of present intention to give—a

complete renunciation of right, by the father, without power of revocation, and a full delivery of possession, as a gift inter vivos." In *Anderson* v. *Baker,* supra, this court held: "To constitute a valid parol gift of a chattel, there must be an immediate delivery of the same by the donor to the donee. The bare declaration of the donor that 'she had given certain negroes to the donee and had no right to sell them,' is not sufficient to pass the title to the donee, without evidence of some act from which the jury may presume a delivery of the property, where the donor remains in possession of the property, exercising dominion over it until her death." In *Harrell* v. *Nicholson,* supra, this court held: "The payee of a note, a short time before his death, sent for the maker and directed him to look in a certain box in the house for the note and to take it and keep it. Upon being informed that the note could not be found in the box, he told the maker to look in his private file at the bank, where he would find the note and to keep it when he found it. The maker was unable to find the note at the bank or elsewhere. After the payee's death a third person found the note in the house and turned it over to the administrator. *Held,* that the transaction did not constitute a gift, there being no actual delivery of the note to the maker, and nothing which the law would accept in lieu thereof." And see, in this connection, *Maddox* v. *Gray,* 75 *Ga.* 452. In *Underwood* v. *Craven,* 142 *Ga.* 658 (83 S. E. 520), an uncle wrote out and signed a promissory note payable to his niece. The note was written in a memorandum-book and left in a drawer where both the uncle and niece kept their papers. The niece did not know of its existence until after his death. It was held that this did not constitute a gift, and that the niece could not recover on the note. As held in the case of *Burt* v. *Andrews,* supra, delivery is just as essential in the case of a gift of a chattel as is the delivery of a deed.

From the foregoing we conclude that one essential element of a gift was lacking, viz., delivery of the gift, that there was no passing of possession from the donor to the donee, and that there was no transfer of dominion, or any act which indicates a renunciation of dominion by the donor, and the transfer of dominion to the donee, over the property (Civil Code of 1910, § 4147) ; and that there was no presumption of acceptance which had not been overcome by proof; and also that there was no express trust created for the son

by the father; and therefore that the essentials of a gift were absent in the present case. Mr. Helmer could at any time prior to his death have erased or canceled the endorsement on the note, and so long as he possessed this power of revocation there was no valid gift. The above and foregoing is, we think, sustained by the decisions of this court; and the same principles have been established by the weight of authority in outside jurisdictions, some of which are the following: Telford v. Patton, 144 Ill. 611 (33 N. E. 1119); Hayes v. McKinney, 73 Ind. App. 105 (126 N. E. 497); Burchett v. Fink, 139 Mo. App. 381 (123 S. W. 74); Partridge v. Kerns, 32 App. Div. 483 (53 N. Y. Supp. 154); Phipps v. Hope, 16 Ohio St. 586; Richardson v. Clow, 8 Ill. App. 91; Whitman v. Pickens, 33 Colo. 484 (81 Pac. 299); Dimon v. Keery, 31 Misc. 231 (64 N. Y. Supp. 1091), affirmed in 54 App. Div. 318 (66 N. Y. Supp. 817); Gray v. Nelson, 77 Iowa, 63 (41 N. W. 566); Cardoza v. Leveroni, 233 Mass. 310 (123 N. E. 672).

2. But it is insisted by counsel for defendant in error that this case "does not rest upon a gift or donation made by his father, but that it was a reduction or credit on the note by reason of the overcharge by decedent, coupled with the desire on the part of the decedent to partially recompense his son for what he had done for decedent's daughter. There is not a single word of evidence that even indicates that a gift was intended, but all the evidence shows that the credit was demanded as a matter of common justice and honesty. The endorsement made on this note by decedent, having a valid consideration, could not be erased at the pleasure of decedent." The following cases are cited in support of the above proposition: Thomas v. Lynn, 41 W. Va. 122 (20 S. E. 878); Carson v. Duncan, 1 Greene (Iowa), 466; Graves v. Moore, 7 T. B. Mon. (Ky.) 341 (18 Am. D. 181). From these authorities it is argued that the endorsement of the decedent, being based on a good and valuable consideration, was complete and could not be erased by the decedent even had he wished to do so. This argument is evidently based upon the hypothesis of a contract between the decedent and his son. Let us therefore inquire what the essentials of a contract are under our law. The Civil Code of 1910, § 4222, declares that to constitute a valid contract there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject-matter

upon which it can operate.   Section 4216 provides that "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." Consequently, before we could declare the endorsement on the note by the decedent to be a contract within the meaning of our code, there must be "the assent of the parties to the terms of the contract." This is an essential and indispensable element in the creation of a contract. But there is nothing in the record to show that the decedent and his son ever contemplated any contract or agreement. So far as the record shows, the matter was never discussed between them. Furthermore, there was never any assent by the son to the alleged contract; and he could not have assented, because he knew nothing of the endorsement or the consummation of such a contract. Nor does the record show any consideration good or valuable moving from the son to his father with a view of making or creating a contract or legal obligation, in which there was a meeting of the minds of the parties in order to complete the contract. Under our law a consideration is essential to a contract which the law will enforce. Civil Code of 1910, § 4241. A consideration is valid if any benefit accrues to him who makes the promise or any injury to him who receives the promise. § 4242. A good consideration is founded on natural duty and affection or on a strong moral obligation. A valuable consideration is founded on money or something convertible into money, or having a value in money, except marriage, which is a valuable consideration. § 4243. As pointed out above, the defendant in error does not contend that the consideration for making the endorsement was natural love and affection, "but all the evidence shows that the credit was demanded as a matter of common justice and honesty." The reply to that argument is the decision of our own court in *Davis* v. *Morgan,* 117 *Ga.* 504 (2), 507 (43 S. E. 732, 61 L. R. A. 148, 97 Am. St. R. 171), where it was held: "But courts can not enforce promises binding on the conscience, except in those cases where some pecuniary damage flows from the breach, or where, in addition to the moral obligation, the promise is also supported by a legal consideration." Mr. Justice Lamar, speaking for the court, said: "When one receives a naked promise and such promise is broken, he is no worse off than he was. He gave nothing for it, he has lost nothing by it, and on its breach he has suffered no damage cognizable by courts. No benefit

accrues to him who made the promise, nor did any injury flow to him who received it. Such promises are not made within the scope of transactions intended to confer rights enforceable at law. They are lightly made, dictated by generosity, courtesy, or impulse —often by ruinous prodigality. To enforce them by a judgment in favor of those who gave nothing therefor would often bring such imperfect obligations into competition with the absolute duties to wife and children, or into competition with debts for property actually received, and make the law an instrument by which a man could be forced to be generous before he was just. Both under the civil and common law, courts were prohibited from enforcing contracts without consideration, and relegated the performance of such promises solely to those who made them." See, in this connection, *Monroe v. Martin,* 137 *Ga.* 262 (73 S. E. 341). There is nothing in the record to show that Harry Helmer paid any money or other thing of value to his father as a valuable consideration within the meaning of that term as used in our code. The fact that he gave money to his adult sister and her children would not support that contention, for Harry owed no legal duty to his adult sister and her children to support them. Nor, indeed, did their father owe any such legal duty to his married daughter, who was of age, to support her, although there might be a moral duty to do so; and there is nothing in the record to indicate any agreement or arrangement between the father and the son for the son to support her. The motive of the father in making the endorsement on the note may have been a fine one, but such a splendid motive of an intention to make a gift is not sufficient in law to complete or consummate it. We therefore conclude that the endorsement made by the decedent must fail, whether we view it in the light of a gift or as a contract. Although the son may be deserving of the highest praise for his benevolence toward his sister and her children, and although the father may likewise be commended for his admirable spirit in wanting to credit the note of his son with the amount endorsed upon the note for the reasons given by him, yet neither of these considerations, in the view we take of this case, would be sufficient to make the gift complete, or make the assignment valid as a contract between the father and the son.

*Judgment reversed. All the Justices concur, except* RUSSELL, C. J., dissenting. I freely admit that acceptance and

delivery are two of the essential requisites of a gift. Where a gift is valuable and of advantage to the donee, acceptance will be presumed. Delivery may be either actual or constructive; but constructive delivery, if clearly proved, is as effectual to complete a gift as actual delivery. In my opinion, under the undisputed evidence in this case the deceased father intended to give his son $5000 by way of rebate or abatement of the indebtedness of $25,000 due him by the son, which was evidenced by a promissory note in the latter amount. There are many instances in which actual delivery is dispensed with, on account of the nature of the article to be delivered. As I see it, delivery of the $5000 of the $25,000 from the father to the son was completely effected by the entry of a credit of $5000 upon the note for $25,000, by calling the attention of the custodian of the note to this change in the paper, which at most only evidenced a debt, and returning the note to the same custody in which it had previously been. From the nature of the property itself, as well as the fact that only an aliquot part of the debt was being given, actual delivery was impossible. No case has been cited in the majority opinion where actual delivery was not possible, and in each case the decision turns largely upon the proposition that for that reason it would be dangerous and contrary to public policy to hold that a gift could be sustained merely because there was evidence of an intention to give. In the gift now before us, while it is true that the father might have found some other means of making a constructive delivery, or might have attempted some substitute for actual delivery different from that which he used, he could not have made actual delivery in any event of what he was actually giving,—a deduction from the debt due him by his son. It may be said that he could have given him $5000, which would have accomplished the same result; but this would not have been the same gift, because the father might have been wholly unable to give him $5000 in cash. He might have given him his note for $5000 to offset the indebtedness due him by his son, but this would have confused the transaction; and furthermore, he may not have been willing to make a note which would of itself merely indicate an indebtedness to his son when in fact he owed his son nothing. As plainly appears from the record, what he intended to give his son was an intangible something and yet a very valuable gift—relief from the

payment of $5000; and I can see no better way in which he could have made delivery of the gift by accomplishing the purpose intended than by an entry in writing made over his own signature on the paper which represented the very $25,000 which his son owed him.