**SOUTHERN INDUSTRIAL INSTITUTE v. MARSH et al.**

(Circuit Court of Appeals, Fifth Circuit. October 27, 1926.)

No. 4835.

1. Wills ⬉16.

Under Civ. Code Ga. 1910, § 3851, bequest to educational institution by will executed less than 90 days before death *held* void.

2. Gifts ⬉49(3).

Evidence *held* to show that deceased intended, before making delivery, to secure written agreement retaining life income from stock which he had transferred to educational institution.

3. Gifts ⬉29.

Under Civ. Code Ga. 1910, §§ 4144–4147, transfer of stock to educational institution, without delivery of certificates, *held* not to constitute a gift; transfer being only prima facie evidence of delivery.

4. Gifts ⬉62(1).

Delivery is essential to valid gift causa mortis.

5. Gifts ⬉53.

Under Civ. Code Ga. 1910, § 4154, gift causa mortis must be intended to be absolute only in the event of death.

Appeal from the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Suit by the Southern Industrial Institute against Mrs. Burnham S. Marsh and another. Decree for defendants, and plaintiff appeals. Affirmed.

John A. Sibley, of Atlanta, Ga. (Spalding, MacDougald & Sibley, of Atlanta, Ga., on the brief), for appellant.

Robert C. Alston, Clifford L. Anderson, Shepard Bryan, and James A. Branch, all of Atlanta, Ga., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. Southern Industrial Institute, appellant, filed its bill in equity to establish its title to 134 shares of common stock and 110 shares of preferred stock of the Bibb Manufacturing Company. Appellant is an educational institution, situated in Alabama, and bases its claim of title upon an alleged gift of the stock to it by the admitted owner, Francis M. Marsh, a few days before his death. Marsh's widow and the executor of his will, appellees, defended the suit on the ground that a valid gift had not been made, because there had been no delivery of the stock.

Marsh was a successful business man, and lived in Atlanta, Ga. He was president of the Atlanta Table Company, with offices in Atlanta. In February of 1922, Marsh visited the Institute, was favorably impressed with it as an educational institution, and in May of that year executed a will in which he made it residuary legatee of his entire estate. About the beginning of the year 1925 his health had become so impaired that he realized he had not long to live, but he went almost daily to his office, and directed his business until April 16 of that year. He died on April 27. In February he made large gifts of stocks and bonds to the Institute, and at that time he gave the stock which is the subject-matter of this suit to a Mr. and Mrs. White. He made the gifts effectual by indorsing the stock certificates and delivering the indorsed certificates to the donees. On March 12 he made a new will, and again named the Institute residuary legatee. A few days later he had the Whites to surrender the stock given to them, and had new certificates issued to himself.

Dr. Lyman Ward, president of the Institute, testified that early in April he was at Marsh's home, and Marsh told him that he had taken back the Bibb Company stock from the Whites, and that the Institute would get that stock; that the witness then stated that he was planning to go to California, and suggested that the stock be transferred immediately, but Marsh replied that was unnecessary, and said "that if anything happened to him before I came back that stock would all be transferred, and Mr. Stewart would hand it to me." On April 13 Ward wrote to Marsh that he had given up his contemplated trip to California. Marsh received the letter, and on April 14 caused A. H. Stewart, the office manager of the Atlanta Table Company, to answer it. On April 11 Marsh wrote a letter to the Citizens' & Southern Company, requesting it to secure the transfer of the Bibb Manufacturing Company stock to the Institute, and gave its address, Camp Hill, Ala., but directed that the new certificates of stock be returned to him; and on April 15 the Citizens' & Southern Company by letter advised Marsh that it was in position to make delivery of the stock. On the 16th, in reply, Marsh signed an order to deliver the stock to Stewart. Stewart did not see Marsh again before the latter's death, but he procured the certificates of stock as directed and placed them in the safe in Marsh's office. Stewart testified that Marsh, in discussing the gift of stock to the Institute, stated that he wanted the Institute to have it, but that he wanted to make delivery in person, that at the time of delivery he intended to require a written agreement from the Institute securing to him the income from the stock during his life, and that it was in pursuance of this purpose that the letter of April 11 to the Citizens' & Southern Company contained the instructions that the new certificates of stock should be returned to Marsh.

The District Judge, as stated in a written opinion, concluded from the evidence, which was taken in his presence, that Marsh intended "to give the stock to the Institute, but to exact an agreement that the dividends be paid to him during his life, and that his belief was that the transfer of the certificates and registration of the company's books in the name of the Institute would operate to entitle it to the stock in case of his death, and that he did nothing further because of this belief. * * * He intended to put the title to the stock out of his estate and into the Institute, if he should presently die, but to control it for further stipulations if he should live to make them. Because of the latter intent he did not deliver to the Institute either the indorsed old certificates or the new ones; because of the former intent he had certificates issued in the Institute's name, instead of simply holding the indorsed old certificates until the stipulations could be made. But the latter intent disappoints the former one, because it destroys that present absolute and unconditional parting with dominion which is necessary to effectuate a gift. The new certificates were held by Marsh, not because he was the proper final custodian of them, nor because it was inconvenient or impossible to get them to the Institute, but in order that terms might be imposed on the gift." Consequently the bill was dismissed.

[1] The wills of Marsh are mentioned for the purpose of throwing light on his intention. The earlier will was revoked by the latter one, but the bequest to the Institute under the latter one was void, because made to an educational institution less than 90 days before Marsh's death. Code Georgia, § 3851.

[2] It is apparent from the District Judge's opinion that he believed Stewart's testimony to the effect that Marsh intended to give the stock to the Institute, but that he also intended before making delivery to exact an agreement from it that he should have the income therefrom during his life. It is insisted on behalf of appellant that Stewart's testimony is against the weight of the evidence, and should be rejected. It is said in argument that he is not a disinterested witness, because an employee of the Atlanta Table Company, of which Mrs. Marsh, appellee, is a large stockholder, and that Stewart's statement was inconsistent with Marsh's act in making the transfer of the stock. The credibility of Stewart was necessarily passed upon by the District Judge, who heard his testimony, and there is nothing in this case to justify an appellate court in rejecting that testimony, because of the supposed interest the witness might have had because of his employment.

There is nothing in the admitted facts and circumstances to contradict that testimony, but, on the other hand, it is corroborated by the written request of Marsh that the new certificates of stock be returned to him, instead of being sent direct to the Institute, whose address had been given to, and was known by, the transfer agent. Although, according to the testimony of the president of the Institute, Marsh stated that the new certificates would be returned to the office of the Atlanta Table Company, that

statement was made at a time when it was supposed that Ward would be in California; but, after Marsh knew that Ward was at the Institute in Alabama, he nevertheless gave written instructions to have the certificates delivered to his own agent. So it can hardly be doubted that Marsh, for some purpose of his own, was not ready to part with any of the stock and make delivery of it. Marsh made delivery of the stock he gave away in February by indorsing and delivering the certificates. If he intended unconditionally to surrender the new gift, no reason is suggested why he could not have had the new certificates delivered direct to the Institute. We feel bound, therefore, to accept the District Judge's estimate of Stewart's testimony to the effect that it was Marsh's intention to exact a written agreement that he should have the dividends from the stock as a condition precedent to delivery of the stock itself to the Institute.

[3] It is also contended, even if Stewart's testimony be accepted as true, that the gift to appellant is nevertheless valid, because there is no inconsistency or conflict between giving the stock and reserving the dividends. The validity of that gift depends upon the laws of Georgia. 28 C. J. 625. The Georgia Code provides that, to constitute a valid gift, there must be an intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act equivalent in law to delivery; that acceptance of a gift of substantial benefit is presumed, unless the contrary be shown; that, when a conveyance is required to be in writing, such conveyance, if executed and delivered, will dispense with the necessity of delivery of the article given; that actual manual delivery is not essential, but any act which indicates a renunciation of dominion by the donor and the transfer of dominion to the donee is constructive delivery. Sections 4144, 4145, 4146, 4147. Delivery is therefore essential to the validity of a gift of personal property. In the absence of a manual delivery, there must be a renunciation of dominion by the donor.

We are of opinion that there was no delivery, because, under the District Judge's findings of fact, there was not an unconditional surrender of dominion. Helmer v. Helmer, 159 Ga. 376, 125 S. E. 849, 37 A. L. R. 1137. The transfer of stock on the books of the Bibb Manufacturing Company was only prima facie evidence of delivery, and cannot be held to constitute delivery in view of Marsh's intention to impose conditions upon his contemplated gift. Until the certificates were actually delivered they were in Marsh's control and under his dominion, and it was still within his power to have the stock transferred back to himself without the consent of the Institute. Matter of Crawford, 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71. The transfer on the books of the corporation did not purport to separate dividends from the stock itself. That transfer, if good at all, transferred the whole interest. It cannot logically be held that the transfer was insufficient to convey the whole interest but was sufficient to convey a less interest. It was either valid as a whole or invalid altogether. Where the donor delivers stocks or securities into the possession of the donee, it has been held that delivery is complete although the donor also has access to the safe where the stocks or securities are placed for safe-keeping. Such is the holding in Beaumont v. Beaumont, 152 F. 55, 81 C. C. A. 251, and Shepard v. Shepard, 164 Mich. 183, 129 N. W. 201, relied on by appellant. But in each of those cases it appeared that at least constructive delivery had been made to the donee. Roberts' Appeal, 85 Pa. 84, is also relied on by appellant. In that case it is held that the writing by the donor of the donee's name upon the envelope containing the certificates of stock was sufficient to show constructive delivery when taken in connection with the will of the donor. But it is clear in this case that the transfer of stock was not intended as a substitute for delivery.

[4, 5] Appellant's final contention is that under the court's findings there was a valid gift causa mortis. That contention cannot prevail, because delivery is as essential in gifts causa mortis as in gifts inter vivos. Basket v. Hassell, 107 U. S. 602, 2 S. Ct. 415, 27 L. Ed. 500; McKenzie v. Downing, 25 Ga. 669. Besides, a gift causa mortis must be intended to be absolute only in the event of death (Code Georgia, § 4154); whereas, the testimony in this case does not support the theory that the gift to the Institute was to be returned in the event Marsh did not die (Burt v. Andrews, 112 Ga. 465, 37 S. E. 726).

The decree is affirmed.